*In re* P.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Veronica P., Respondent-Appellant).

First District (5th Division)   No. 1—92—4104

Opinion filed April 22, 1994.

Laurene M. Heybach and Diane Redleaf, both of Legal Assistance Foundation of Chicago, of Chicago, for appellant.

Patrick T. Murphy, Public Guardian, of Chicago (Kathleen G. Kennedy and John Uglietta, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Veronica P., the mother of P.P., appeals from an order of the Cook County juvenile court which removed P.P. from her custody and placed her in the custody of Gary T. Morgan, guardianship administrator for the Department of Children and Family Services (DCFS). Patrick T. Murphy, as public guardian, has filed a cross-appeal in this matter, contending that it was proper for the juvenile

court to have removed P.P. from Veronica's custody, but that the court's finding, that an injury suffered by P.P. was not intentionally inflicted, was against the manifest weight of the evidence. The office of the Cook County State's Attorney, representing the State in this case, asks only that the juvenile court order granting DCFS guardianship of P.P. be upheld.

The underlying facts of this case are as follows.

On December 13, 1991, Veronica P., the mother of two children, N.P. and A.P., gave birth to a third child, P.P. After P.P. was born, Veronica became the subject of a neglect report due to the presence of cocaine in P.P.'s system at birth. On December 20, 1991, pursuant to section 2—10 of the Juvenile Court Act of 1987 (the Act) (Ill. Rev. Stat. 1991, ch. 37, par. 802—10; 705 ILCS 405/2—10 (West 1992)), DCFS filed a petition for adjudication of wardship of P.P. with the juvenile court and the court placed P.P. in the temporary custody of DCFS.

On February 3, 1992, Veronica P. appeared in court for the first time and was appointed counsel. On May 12, 1992, based upon an admission by Veronica P. that there was a controlled substance in P.P.'s system at the time of her birth, P.P. was adjudicated a neglected child pursuant to section 2—14 of the Act (Ill. Rev. Stat. 1991, ch. 37, par. 802—14; 705 ILCS 405/2—14 (West 1992)), and the matter was set for dispositional hearing.

At the dispositional hearing held July 22, 1992, evidence was presented regarding Veronica P.'s rehabilitation from drug abuse. The court returned custody of P.P. to Veronica, but entered an order of protective supervision pursuant to section 2—24 of the Act. (Ill. Rev. Stat. 1991, ch. 37, par. 802—24; 705 ILCS 405/2—24 (West 1992).) The date of September 28, 1992, was then set for a progress report on the case.

On September 28, 1992, at the progress hearing, the court was informed that on September 12, 1992, P.P. had suffered a scalding burn on her left hand, serious enough to require hospitalization. Because neither the DCFS worker nor the guardian *ad litem* (GAL) had been aware of the injury until the hearing date, the court continued the hearing until October 2, 1992. On October 2, 1992, the court was informed that Veronica P. had been arrested on the previous evening in relation to the injury to P.P. and that all three of Veronica's children were taken into protective custody and were being held in the hospital. The GAL indicated that a supplemental petition would be filed and asked that the matter be continued to October 6, 1992, for a hearing to determine whether P.P. should be removed from Veronica's custody.

On October 5, 1992, a petition for supplemental relief was filed by the public guardian requesting, in the best interest of P.P., that the section 2—24 protective supervision order be vacated and Gary T. Morgan be appointed guardian with the right to place. DCFS also filed a petition for supplemental relief making the identical request, alleging that Veronica had violated the protective order by not providing P.P. with all the care necessary for her well-being.

On October 6, 1992, hearing was commenced on these petitions. At that time all of Veronica's children remained in protective custody. The court heard the testimony of several witnesses regarding the scalding injury to P.P.'s left hand. After hearing the testimony of these witnesses, the court expressed its belief that the State had not proven by a preponderance of the evidence that P.P. had been intentionally injured by Veronica. Nevertheless, the court indicated that the scalding burn, as well as bite marks found on P.P.'s cheek, indicated that Veronica had failed to keep P.P. safe from harm and constituted evidence that P.P. was neglected. Accordingly, the court stated that there was "probable cause, urgent and immediate necessity and reasonable efforts." The court then vacated the section 2—24 order of supervision and appointed Gary T. Morgan guardian with the right to place. It is this order that is being appealed.

With respect to Veronica's other two children, the court found that the negligence to P.P. would "carry over" to these children, but that the risk of further harm to them, under the circumstances, was not so great that placement was required. Thus, the court held "probable cause, no urgent and immediate necessity," vacated the temporary custody order with regard to N.P. and A.P. and returned them to Veronica under a section 2—25 order of protection. This order is not part of the appeal.

Veronica P., represented by the Legal Assistance Foundation of Chicago, argues in her appeal that the court improperly removed P.P. from her custody without legal basis and without following proper statutory procedure. The office of the Cook County public guardian cross-appeals the court's finding that the scalding burn to P.P.'s hand was not intentionally inflicted, arguing that this finding was against the manifest weight of the evidence. The office of the Cook County State's Attorney asks only that this court uphold the juvenile court's decision to vacate the section 2—24 order and place P.P. in the custody of Gary T. Morgan.

■ The first issue to be determined here is a procedural one, that is, whether juvenile court followed proper statutory procedure when it acted in this matter. Veronica P. argues that neither of the petitions for supplemental relief indicated under what provision of

the Juvenile Code they were proceeding and that the court was unclear as to what stage of proceedings it was acting under, *i.e.*, whether the hearing held was one to determine whether temporary care was necessary pursuant to section 2—10 of the Act; whether it was an adjudicatory hearing pursuant to sections 2—14, 2—18 and 2—21 of the Act; or whether it was a dispositional hearing pursuant to sections 2—22 and 2—23 of the Act. The court seemed to indicate that it was acting under the authority it possessed by virtue of the section 2—24 order of protective supervision and that, by vacating the section 2—24 order, custody "reverted" to Gary T. Morgan. Veronica P. argues that, assuming that she violated the 2—24 order, the court had no authority to remove P.P. from her custody as a sanction for a violation of the section 2—24 order. She contends that the *sole* remedy for a violation of a section 2—24 order is set forth in section 2—26, wherein it states that the court may issue a warrant to take the alleged violator into custody to be brought before the court upon a citation to show cause for contempt of court.

We agree that there was some confusion or lack of clarity regarding the procedural authority upon which the court was relying. Nevertheless, we believe that the court had the authority to intervene in this case pursuant to section 2—28 of the Juvenile Court Act and that the petitions for supplemental relief would have been more properly termed petitions for a change of custody pursuant to section 2—28(3). Ill. Rev. Stat. 1991, ch. 37, par. 802—28(3); 705 ILCS 405/ 2—28(3) (West 1992).

It is important to note that at the time P.P. was returned to the custody of Gary T. Morgan in October 1992 she had already been adjudicated a neglected child and was a ward of the court who had been returned to the custody of her mother under an order of protective supervision. Given those circumstances, we believe that a court has the authority to retake custody of a minor upon a determination that the section 2—24 order of protective supervision had been violated and that circumstances and the best interests of the child warrant such action.

In section 2—23 of the Act, wherein it discusses the kinds of dispositional orders that a court may issue upon an adjudication of abuse or neglect, it states in paragraph (3):

> "Unless the order of disposition expressly so provides, it does not operate to close proceedings on the pending petition, but is subject to modification until final closing and discharge of the proceedings under section 2—31." (705 ILCS 405/2—23(3) (West 1992).)

Additionally, in section 2—28, the Act provides for regular court

review of cases and states that the court may, upon the hearing of the update report, remove the custodian or guardian and appoint another or "restore the minor to the custody of his parents or former guardian." (705 ILCS 405/2—28 (West 1992).) It is clear that, when a child is the ward of the court and under its protection, the above-cited provisions give the court the authority to vacate any dispositional order it has made and issue any new dispositional order that it might have made, upon a determination that a change in circumstances has occurred necessitating such action. See *In re S.M.* (1992), 223 Ill. App. 3d 543, 585 N.E.2d 641; *In re Johnson* (1981), 102 Ill. App. 3d 1005, 429 N.E.2d 1364.

We find no support for Veronica P.'s claim that the *sole* remedial action for a violation of a section 2—24 order is to bring the alleged violator before the court, for if this were the sole remedy the provision would be meaningless. Interpreting the statute in such a way that the court has the ability to bring the alleged violator before the court but no authority to act upon the situation, would be contrary to common sense. Furthermore, reading section 2—26 in conjunction with the subsequent section 2—28 shows that the court does have the authority to make custodial changes during the period that the case is within the court's protective supervision.

We conclude that the juvenile court may, at the time it conducts a court review of a case in which a minor has already been adjudicated abused and/or neglected, been made a ward of the court and placed under the protective shield of a court order of supervision, alter custodial placement if the circumstances and best interests of the child warrant. Having so concluded, we now turn our attention to the court's decision to return P.P. to the custody of Gary T. Morgan. We shall consider whether the court's determination that the injury to P.P. was not intentional was against the manifest weight of the evidence and, in light of that decision, whether the removal of P.P. from the custody of her mother was warranted under the facts present.

At the hearing on the issue of the injury to P.P.'s hand, the court heard testimony from several witnesses including two medical experts. One such expert was Dr. Demetria Soter, a pediatrician at Cook County Children's Hospital, who was also an attending physician with regard to P.P.'s injury. Dr. Soter was found qualified as an expert in pediatrics and pediatric burns.

Dr. Soter testified that she saw P.P. in the hospital on September 14 and 15, 1992, and diagnosed her burn as a second degree immersion burn. Because of the pattern of the burn, Dr. Soter believed it to be intentionally inflicted.

Dr. Soter testified that, through inquiries she had made, she learned that Veronica and her children lived in a halfway house called Granger Hall. Her residence had only hot water on tap and the water was estimated to be 120 degrees Fahrenheit. Given the temperature of the water, Dr. Soter testified that it would take between 20 and 40 seconds of immersion to produce the type of second degree burn that P.P. had suffered. Because a child would not willingly hold its hand in such hot water for that length of time, Dr. Soter believed the injury was intentionally inflicted. Additionally, Dr. Soter explained that the burn, which showed a distinct line demarcation, would have likely had "wave" or "splash" marks if the child had accidentally fallen into the water.

Upon cross-examination Dr. Soter admitted that a change in the temperature of the water would also alter the length of time necessary for the burn to occur. If the water temperature was 140 degrees Fahrenheit, the burn could have occurred in only one to two seconds of immersion. Nevertheless, Dr. Soter still believed that an accidental immersion was unlikely due to the absence of splash marks.

Dr. Soter also testified that bite marks had been found on P.P.'s left cheek. These bite marks were examined by a dental surgeon and were believed to have been inflicted by P.P.'s two-year-old sister.

The other medical expert, Dr. Aleta Clark, is also a pediatrician who was qualified by the court as an expert in pediatrics and in diagnosing abuse. She agreed with Dr. Soter that the injury was a second degree immersion burn, but testified that the pattern of the burn, alone, did not answer the question of whether the burn was intentionally inflicted. In Dr. Clark's opinion, it was important to consider Veronica's explanation for the injury and determine whether it was feasible.

Veronica's explanation of the injury (which she later testified to in court) was that on September 13, 1992, she had been taking a nap with N.P., who had been sick and in the emergency room the night before. When Veronica woke up, she went to the bathroom to wash up. N.P. then woke up and began to cry. Veronica got N.P. and brought her into the bathroom, at which time P.P. woke up and began to cry. Veronica retrieved P.P. from her crib and returned to the bathroom where N.P. began to get physically ill. Veronica balanced P.P. on the edge of the sink while attending to her other sick child. The water had been left running in the sink, which had been stopped up by a wash cloth left in the sink. Veronica never saw P.P. place her hand in the water but assumed that she must have done so while she had been paying attention to N.P. vomiting in the toilet. P.P. had been crying throughout, but when Veronica turned

her attention back to P.P. she noticed that she was holding her hand out. It was then that she discovered that P.P.'s hand was red and injured.

According to Dr. Clark, this explanation was feasible and could account for the injury to P.P. She admitted that it was possible that the injury was intentionally inflicted, but testified that it was also possible that the injury occurred as stated by Veronica. Based upon the temperature of the water, which was not known conclusively because the hot water boiler servicing Veronica's apartment had been altered before the water temperature could be tested, P.P. could have dipped her hand in the water very briefly and sustained the burn to her hand.

Workers and counselors from the halfway house where Veronica and the children lived also testified. By their accounts Veronica was a loving and caring mother who had been extremely cooperative in all of the programs aimed at eliminating her drug addiction. Veronica remained drug-free throughout her stay at the facility and she willingly attended all counseling and parenting sessions offered to her. They testified that Veronica, appropriately, had become very concerned and upset when P.P. was injured and she visited P.P. regularly at the hospital.

After hearing all of the evidence the court indicated that it could not say that it was proven by a preponderance of the evidence that the burn injury to P.P. was intentionally inflicted. Nevertheless, the court then went on to state that having only hot water in the sink was a dangerous condition that Veronica had done nothing to correct and that she had not protected P.P. from being bitten. Apparently for these reasons and without further elaboration, the court stated that there would be a finding of "probable cause, urgent and immediate necessity and reasonable efforts." The court then vacated the section 2—24 order and appointed Gary T. Morgan as guardian with the right to place.

It is the public guardian's position in its cross-appeal that the court's finding that the injury was not intentionally inflicted was against the manifest weight of the evidence. First of all, this court would like to note that the order appealed from makes no mention of any findings with regard to the injury. In fact, it makes no mention of any findings whatsoever. The October 1992 order from which this appeal and cross-appeal is taken states as follows:

> "This cause coming on to be heard before the Honorable Gary L. Brownfield, the parties being present or represented by their attorney, and the Court being fully advised of all premises,

IT IS HEREBY ORDERED:

(a) 2—24 order is vacated.

(b) Custody of [P.P.] reverts to Gary T. Morgan as guardian.

(c) Veronica [P.] is indigent and, accordingly, the reporter shall prepare a transcript of this court's ruling of Friday, October 9th and today, Tuesday October 13th, 1992 at county expense."

No findings of fact were made a part of the judgement, nor was there any motion to have the court's remarks made a part of the judgment order entered. Thus, it is questionable whether the court's oral proclamations are properly before this court as actual findings of fact.

Assuming *arguendo* that the court's remarks do constitute findings of fact, we find no support for the public guardian's position that it was against the manifest weight of the evidence to find that the burn injury to P.P. was not intentionally inflicted. Both medical experts agreed that the pattern of the burn provided a strong indicator that the injury was not accidental. Nevertheless, their testimony also showed that it was possible that P.P. could have placed her hand in the extremely hot water for only a second or two, depending on the temperature of the water that had collected in the wash basin of the sink, and sustained the injury that she did. This testimony, taken in conjunction with the testimony that Veronica's general behavior toward P.P. and her other children was loving, caring and appropriate, supports the court's ruling that the injury was not proven to be intentionally inflicted.

The question that we must now address is whether the circumstances and best interests of the child warranted the change in dispositional order, removing P.P. from Veronica's custody and placing her in the custody of DCFS. As stated in *In re S.M.* (223 Ill. App. 3d at 547), petitions brought pursuant to section 2—28(3) do not implicate the same procedural requirements applicable to petitions filed for relief under the Act prior to adjudicatory hearings. Rather, they are simply further dispositional hearings which should be conducted in accordance with section 2—22(1) of the Act, *i.e.*, the court must determine the proper disposition serving the best interests of the minor and the public. This determination is left to the sound discretion of the court and the court's determination shall not be reversed unless it is against the manifest weight of the evidence. *In re S.M.*, 223 Ill. App. 3d at 547.

■ In this case the juvenile court heard evidence that P.P. had sustained a serious injury shortly after being returned to her mother's custody. The court heard testimony that it would not be

unusual for one child to be singled out for abuse, especially if that child's physical or emotional condition makes it more susceptible. In this case it was undisputed that P.P. was born addicted to cocaine. Furthermore, Dr. Soter testified that P.P. seemed to be a particularly irritable infant, crying incessantly, which may have been related to the drugs in her system at birth. We believe that it was within the trial court's discretion to find that P.P. was at greater risk under the circumstances and that, although it could not be proven that she was intentionally burned, it would be in her best interests to be placed outside of the home for a period of time.

For the reasons stated above, we affirm the order of the juvenile court placing P.P. in the custody of the Department of Children and Family Services.

Affirmed.

McNULTY and COUSINS, JJ., concur.