8 March 2000

 No. 3--98--1009

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1999

IN THE INTEREST OF J.B., ) Appeal from the Circuit Court

a Minor ) of the 13th Judicial Circuit,

 ) La Salle County, Illinois

(THE PEOPLE OF THE STATE OF )

ILLINOIS, )

 )

Petitioner-Appellee, ) 

 )

v. ) No. 95--J--176

 ) 

DAVID B., ) Honorable

                                ) H. Chris Ryan

Respondent-Appellant). ) Judge, Presiding

_________________________________________________________________

JUSTICE KOEHLER delivered the opinion of the court:

_________________________________________________________________

 

The respondent, David B., appeals from the judgment of the circuit court which established "substitute care pending court determination on termination of parental rights" as the permanency goal for the minor, J.B.  We affirm.

J.B. was born on January 19, 1993.  In June 1995, the State filed a petition to adjudicate J.B. neglected because her parents, David B. and Cindy B., maintained their home in a filthy condition.  In addition, the petition alleged that J.B. was filthy, with dirty, matted hair and dirty clothes.  The petition further alleged that there was no soap or shampoo in the home.

In August 1995, J.B. was adjudicated neglected and placed in the temporary custody of the Department of Children and Family Services (the Department).  Shortly after J.B.’s removal from the home, David B. and Cindy B. separated.  Under the service plan drafted by the Department, David B. was required to submit to a mental health evaluation and follow up with any recommended therapy.  He was also required to maintain stable housing arrangements and to keep both his home and his person clean.  These tasks were repeated on each service plan developed by the Department.

A March 1996 report to the court indicated that David B. had recently obtained full-time employment in Dwight, Illinois.  In June 1996, the report noted that David B. had changed jobs three times in the previous six months.  By the October 1996 report, the caseworker reported that David B. had not visited with J.B. since July 1, 1996.  In August 1996, he told the caseworker that his car was in the shop and he was out of work.  By October, David B. had found another job.  However, he had not contacted the caseworker to resume visitation with J.B.

In a progress report dated April 11, 1997, the caseworker noted that David B. continued to be employed.  However, he had not seen J.B. since July 1, 1996, and he had not responded to letters sent by the caseworker.

In November 1997, the caseworker learned that David B. had been arrested and had given a Streator, Illinois, address to the police.  The caseworker sent correspondence to that address to no avail.

The trial court approved a change of permanency goal from "return home" to "substitute care pending court determination on termination of parental rights" in December 1997.  As of February 1998, David B. could not be located.

The June 1998 progress report noted no contact from David B.  However, the caseworker testified that she had seen him in a grocery store and had told him about the upcoming court date on J.B.’s case.  As of November 1998, David B. had not contacted the caseworker or appeared in court.

David B. appeared at the permanency review hearing on December 9, 1998.  At this hearing, the trial judge determined that neither Cindy B. nor David B. had made reasonable efforts and reasonable progress.  The judge found both parents unfit.  He determined that the proper permanency goal was substitute care pending determination on termination of parental rights.  The court ruled that the Department would continue to be the guardian and custodian of J.B., and that David B.’s visitation would be suspended pending a decision on the petition to terminate his parental rights.

Initially, we note that there is some confusion between the parties as to the proper standard of review.  David B. maintains that the standard for overturning a trial court’s decision to change the permanency goal for a minor should be "abuse of discretion."  The State argues that the proper standard is whether the trial court’s decision is "against the manifest weight of the evidence."

To determine the proper standard of review, we must refer to section 2--28 of the Juvenile Court Act.  Section 2--28 governs permanency review hearings.  705 ILCS 405/2--28 (West 1998).  This section has been amended several times since 1997.  See 
In re J.H.
, 304 Ill. App. 3d 188, 709 N.E.2d 701 (1999) (for a discussion of the various amendments).  The standard of review governing decisions made under the previous versions of section 2--28 was whether the trial judge’s decision was "against the manifest weight of the evidence."  See 
In re P.P.
, 261 Ill. App. 3d 598, 605, 633 N.E.2d 965, 970 (1994).  The Appellate Court, Fourth District, has determined that the amendments to the statute do not require a shift of the standard of review.  See 
J.H.
, 304 Ill. App. 3d at 199, 709 N.E.2d at 708.  That court rejected "abuse of discretion" as a standard and adhered to the "manifest weight of the evidence" standard.  See 
J.H.
, 304 Ill. App. 3d at 200, 709 N.E.2d at 708.

We agree with the 
J.H.
 court.  Although the recent amendments made great changes in the contents of section 2--28, the nature of the inquiry is unchanged.  The court must consider the circumstances of the case and determine whether those circumstances warrant continued wardship.  Inasmuch as the nature of the court’s inquiry has not changed, neither should the standard of review.  We hold that when a trial court establishes a permanency goal at a permanency review hearing, its decision will not be reversed unless it is against the manifest weight of the evidence.

Next, we must address the merits of David B.’s appeal.  He challenges the trial court’s decision to make substitute care pending court determination on termination of parental rights the permanency goal for J.B.

Section 2--28 requires the trial court to consider a variety of factors in determining the permanency goal for the child.  705 ILCS 405/2--28(2) (West 1998).  These factors include: the age of the child; options available for permanence; current placement of the child and the intent of the family regarding adoption; emotional, physical and mental status or condition of the child; types of services previously offered and whether the services were successful (or, if not successful, the reasons the services failed); availability of services currently needed and whether the services exist; and the status of the minor’s siblings.  705 ILCS 405/2--28(2) (West 1998).  The court must also consider:  the permanency goal contained in the service plan; the appropriateness of the services contained in the plan and whether those services have been provided; whether reasonable efforts have been made by all the parties to the plan to achieve the goal; and whether the plan and goal have been achieved.  705 ILCS 405/2--28(2) (West 1998).

At the time of the permanency review hearing in the instant case, J.B. was 6 years old.  David B. had not seen her for 2½ years.  He had not complied with any of the service plan tasks.  Consequently, he had not achieved any of the goals of the service plan.  David B. could offer J.B. no permanent placement with himself.  J.B. was settled into life with her foster family.  There is a very good chance that she would not recognize or remember David B.  Given these facts, the trial court’s decision to make substitute care pending court determination on termination of parental rights the permanency goal for J.B. was not against the manifest weight of the evidence.

The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER, PJ., and HOMER, J., concur.