# Illinois Official Reports

## Appellate Court

---

### *In re Kelvion V.*, 2014 IL App (1st) 140965

---

| | |
|---|---|
| Appellate Court Caption | *In re* KELVION V. and TYLEA V., Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. Tiffany V., Respondent-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-14-0965 |
| Filed | December 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order vacating an order of protective supervision allowing respondent's minor children to reside with her subject to certain conditions was upheld over respondent's contention that the evidence presented at the hearing on the public guardian's emergency motion to vacate the order did not support the finding that respondent violated certain provisions of the order and did not warrant removing the children from her custody. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 12-JA-211, 12-JA-212; the Hon. Maureen F. Delehanty, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Law Offices of Anthony M. Petrone, P.C., of Chicago (Anthony M. Petrone, of counsel), for appellant.

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Susan S. Wigoda, of counsel), for the People.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1 Respondent-appellant Tiffany V. appeals from a March 7, 2014 order of the circuit court of Cook County vacating a December 16, 2013 order of protective supervision, which allowed her minor children to reside with her subject to certain conditions. Tiffany V. contends that the evidence at a hearing on the Cook County public guardian's emergency motion to vacate the order did not support the trial court's finding that she violated certain provisions of the order and did not warrant removing the children from her care and custody. We disagree and affirm.

¶ 2                                          BACKGROUND

¶ 3 Tiffany V.'s older child, Kelvion, was born on September 27, 2007, and was six years old at the time of the hearing; his younger sister, Tylea, born on January 10, 2012, was two years old when the hearing was held.

¶ 4 Kelvion and Tylea first came to the attention of the Department of Children and Family Services in February 2012 when Tylea, then less than two months old, was hospitalized and diagnosed with nonorganic failure to thrive. During Tylea's hospitalization, Tiffany V. did not adhere to Tylea's feeding schedule, threatened to remove Tylea from the hospital against medical advice, and when Tylea was discharged on February 17, 2012, failed to follow the hospital's discharge instructions for Tylea's care. On February 21, 2012, a follow-up investigation revealed no food or infant formula in Tiffany V.'s home and there was a strong stench of urine in the residence. It was also observed that Tiffany V., who had been diagnosed with lipodermatosclerosis–a chronic and painful skin condition affecting the lower legs as a result of venous insufficiency–exuded a fetid odor and had been prescribed medication that had a sedative effect. Kelvion and Tylea were taken into protective custody on February 23, 2012.

¶ 5 On February 24, 2012, the State filed petitions for adjudication of wardship for both children. On August 13, 2012, the trial court found that Tylea was neglected because she lacked necessary care and that both children were neglected because they were in an injurious environment. The court also found that Tiffany V. was unable to care for, protect and train her children, and as a result, the court made Kelvion and Tylea wards of the court.

¶ 6 Tiffany V. both appealed and sought reconsideration of the August 13, 2012 order. She later dismissed her appeal and her motion for reconsideration was denied on October 19, 2012.

¶ 7 The trial court proceeded with permanency planning hearings for Kelvion and Tylea, who had been placed together in a nonrelative foster home. On February 5, 2013, following a hearing, the court entered the goal of return home within 12 months. The court noted that Tiffany V. had made progress in therapy and was required to continue her involvement in parenting classes.

¶ 8 Another permanency planning hearing was held on July 29, 2013. The court continued the goal of return home and noted that Tiffany V. needed to continue to make progress in necessary services.

¶ 9 In December 2013, Tiffany V. filed a motion to return Kelvion and Tylea to her care and custody. At a hearing on the motion held on December 16, Jennifer Costello, a caseworker from ChildLink assigned to work with Tiffany V. and her family, testified that the agency supported Tiffany V.'s motion. Costello noted that Tiffany V. had successfully completed all recommended services and had been discharged from therapy. Although the agency where Tiffany V. was engaged in parenting coaching had closed, Costello's agency filled in with play therapy and Costello also conducted weekly observations of the family. Costello noted that Tiffany V. had adhered to her agreement not to have any contact or to allow her children to have any contact with a man named Omar who lived in her building. Tiffany V. had been allowed unsupervised overnight visits twice weekly since September 2013, and based on her observations, Costello was of the opinion that Tiffany V. was meeting her children's needs and that her home was safe and appropriate for them.

¶ 10 The State and public guardian ultimately agreed to Tiffany V.'s motion with the stipulation that the children be permitted continued contact with their foster parent, with whom they had established a bond. Based on the evidence and the parties' agreement, the court entered a modified dispositional order finding Tiffany V. fit, willing and able to parent her children. The court also entered an order of protective supervision pursuant to section 2-24 of the Juvenile Court Act of 1987 (705 ILCS 405/2-24 (West 2012)), which allows the court to impose conditions upon release of children under the court's jurisdiction to the custody of their parents. Pursuant to the order of protective supervision, Tiffany V. was obligated to provide all care necessary for the minors, and ensure (i) appropriate supervision of the minors at all times, (ii) an appropriate care plan for the minors, (iii) attendance at school by school-age minors and (iv) that her children have no contact with any individual not approved by DCFS.

¶ 11 During the hearing, the court specifically admonished Tiffany V. that its paramount concern was that she not permit the children to have contact with Omar or anyone that had not been previously vetted by Costello while the order of protective supervision was in place. The court informed Tiffany V. that if she violated that provision of the order, the children would be removed from her care immediately. The court also ordered Tiffany V. to ensure that her children were appropriately supervised at all times and that any caregivers be approved by Costello. Finally, the court ordered Costello to conduct at least five unannounced visits per month with the family. The court advised Tiffany V. that the visits were necessary to ensure the children's safety and well-being.

¶ 12 On the evening of March 4, 2014, Costello made an unannounced visit to Tiffany V.'s home. When she arrived, she observed Tiffany V. and Kelvion outside about a half block from their home. Tiffany V. informed Costello that her aunt was taking care of Tylea. In Costello's

presence, Tiffany V. used her cell phone to make a call and Costello heard her ask when Tylea would return home. She then informed Costello that her aunt did not plan to return Tylea for some time and so Costello would be unable to see her. Costello informed Tiffany V. that she wanted to inspect the home because of a concern raised during her last visit about the presence of an unapproved man. It took Tiffany V. about 20 minutes to traverse the short distance to her home and she had to stop frequently. She claimed to have fallen on the ice recently. After stalling, Tiffany V. ultimately let Costello into her apartment where Costello, over Tiffany V.'s objection, entered her bedroom to find Tylea alone and asleep on Tiffany V.'s bed. At that point, Tiffany V. offered no explanation why Tylea was in the home alone. Costello stayed in the home for about an hour and did not observe any of Tiffany V.'s relatives there during her visit.

¶ 13    On March 5, 2014, the public guardian filed an emergency motion to vacate the order of protective supervision. Tiffany V.'s attorney, who had not yet been served with the emergency motion, participated in the hearing via speaker phone. Having moved the children from foster care to Tiffany V.'s home less than two months earlier, the court was reluctant to take Kelvion and Tylea back into care immediately because of the potential adverse impact on them. The court ultimately instructed Costello to increase her visits to the home and to develop a safety plan with Tiffany V. pending the hearing on the emergency motion, which was scheduled for March 7, 2014.

¶ 14    On March 7, 2014, the public guardian filed an amended emergency motion alleging a violation of and seeking to vacate the order of protective supervision. New matter included in the amended motion represented that Costello attempted to schedule an emergency meeting with Tiffany V. on March 5, but Tiffany V. refused to meet with her and claimed to have scheduling conflicts, including picking Kelvion up from school. Costello was able to meet with Tiffany V. later on March 5 only after showing up at her home and persuading Tiffany V., who was screaming at her, to open the door. Further, Kelvion did not attend school on March 5 and Costello learned that he had 12 unexcused absences from school and numerous late arrivals since he was returned to Tiffany V.'s care.

¶ 15    When the case was called on the afternoon of March 7, counsel for Tiffany V. informed the court that his client had called his office and left several messages. When he spoke to her most recently, she was waiting for a cab to come to court. When he called the cab company, Tiffany V.'s attorney learned that she had cancelled two orders for cabs that morning and the company would not go to pick her up again. She had also not called another cab. Counsel requested that the hearing be continued to the following Monday. Before ruling on counsel's request, the court indicated that it wanted to hear from Costello about her most recent visit to Tiffany V.'s home.

¶ 16    Costello was sworn and testified that when she arrived at Tiffany's home in the late afternoon of March 5, Tiffany V. refused to open the door, accusing Costello of trying to take her children. Tiffany V. eventually opened the door and spoke to Costello as well as Costello's supervisor on the phone. With respect to Tylea being left alone, Tiffany V. claimed that she left Tylea in the care of her aunt and did not know that the aunt had left Tylea with Tiffany V.'s cousin. Tiffany V. claimed her cousin was present on March 4 when Costello visited, but was outside the home during the entirety of Costello's visit. Costello noted the apparent conflict between Tiffany V.'s current version and her conduct in supposedly speaking to her aunt on March 4 and later informing Costello that Tylea would not be returned for some time.

- 4 -

Although the agency had received sufficient information to approve Tiffany V.'s aunt as a care provider for the children, they had received no information about Tiffany V.'s cousin. When Tiffany V. informed Costello that she had a disagreement with her aunt, Costello told her she needed to identify another source of support, but Tiffany V. refused to give Costello any further information about her aunt or cousin, claiming that they did not want to have anything to do with DCFS. Costello informed Tiffany V. about the necessity of her appearance at the hearing scheduled for March 7.

¶ 17    In response to a question from Tiffany V.'s counsel designed to elicit testimony that this was Tiffany V.'s only violation of the order, Costello also testified regarding an incident that occurred during the visit immediately preceding the March 4 visit. On that occasion, Costello heard the noise of a man snoring coming from Tiffany V.'s bedroom. When asked, Tiffany V. claimed the noise was coming from the television, but during the remainder of the visit, the snoring got louder and Costello was convinced there was a man in Tiffany V.'s bedroom. At that point, Costello was not comfortable entering the bedroom, but her supervisor later told her that she should have, which is what prompted her to do so over Tiffany V.'s objection on March 4 when she found Tylea alone.

¶ 18    Costello testified that the agency believed Kelvion and Tylea should be removed from the home because of safety concerns resulting from Tylea being left alone as well as Tiffany V.'s contradictory versions of events leading to that situation. Costello was also of the opinion, based on her observations of Tiffany V. on March 4, that Tiffany V.'s mobility was compromised to the extent that Costello did not believe she was physically capable of running after her children.

¶ 19    Following the hearing, the court expressed its concerns about Tiffany V.'s dishonesty regarding the circumstances of Tylea being left alone and her reluctance to allow Costello into her home on March 5 to check on the safety and well-being of the children. The court found such conduct inconsistent with the "absolute transparency" required in order to ensure the children's safety. Further, although Costello informed Tiffany V. of the date and time of the hearing on March 7, the court noted that Tiffany V. had not arranged for transportation and failed to appear. Although the court acknowledged Tiffany V.'s previous efforts to comply with court-ordered services, those efforts could not outweigh the paramount concern over the children's well-being. Consequently, the court granted the public guardian's motion and entered a modified dispositional order vacating the December 16, 2013 order, finding Tiffany V. unable to care for Kelvion and Tylea and removing them from her care. The children were again placed in foster care. Tiffany V. timely appealed.

¶ 20                                    ANALYSIS

¶ 21    Tiffany V. challenges the trial court's order on two bases: first, she contends the finding that she violated the order of protection is contrary to the manifest weight of the evidence; second, she claims that the court's ultimate decision to remove Kelvion and Tylea from her care constituted an abuse of discretion. Neither contention has merit.

¶ 22    Dispositional hearings under the Juvenile Court Act focus on "whether it is in the best interests of the minor and the public that [the minor] be made a ward of the court." 705 ILCS 405/2-22(1) (West 2012). Under section 2-27 of the Juvenile Court Act, the court may commit a minor to, among other placements, a DCFS wardship, if the court finds that the parents "are unfit or are unable, for some reason other than financial circumstances alone, to care for,

protect, train or discipline" the child and that "the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27(1) (West 2012).

¶ 23    In all dispositional hearings, "[t]he best interests of the child is the paramount consideration to which no other takes precedence." *In re Austin W.*, 214 Ill. 2d 31, 46 (2005). The party requesting a finding that a parent is unable to care for, protect, train or discipline her children must establish the parent's inability by a preponderance of the evidence. *In re D.W.*, 386 Ill. App. 3d 124, 139 (2008). We will reverse a dispositional order only if it is contrary to the manifest weight of the evidence. *Id.* A finding will be deemed contrary to the manifest weight of the evidence when the record demonstrates that "the result opposite to that reached by the trial court was the proper result." *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007). We review the trial court's decision regarding the proper disposition for an abuse of discretion. *In re P.P.*, 261 Ill. App. 3d 598, 605 (1994).

¶ 24    *In re P.P.* is closely analogous to this case. In that case after the court declared the minor child a ward of the court, the court, based on the mother's progress in pursuing rehabilitation for her substance abuse problem, returned the minor to the mother's care. After the minor suffered a serious scalding injury, the court returned the minor to DCFS guardianship. On appeal from that order, this court affirmed that when a minor has been adjudged abused and/or neglected, been made a ward of the court and placed under the protective shield of an order of supervision, the court retains the ability to alter the custodial placement of the child as the best interests of the child warrant. *Id.* at 602. Although evidence was presented at the hearing on the public guardian's petition to vacate the order of protective supervision that the injury to the child could have been accidental, the court nevertheless concluded that removal of the child from her mother's care was warranted. This court determined that the trial court did not abuse its discretion in reaching that result. *Id.* at 606.

¶ 25    Here, the evidence we have summarized above overwhelmingly supports the result reached by the trial court. Within two months of being placed in Tiffany V.'s care, the caseworker reported disturbing events in Tiffany V.'s home: Tylea was left alone in the home, Tiffany V. lied to Costello about Tylea's whereabouts and arrangements she had made for her care and Tiffany V. later resisted efforts by Costello to check on the children's safety. Evidence adduced regarding these events clearly established Tiffany V.'s violations of the order of protective supervision and thus the public guardian sustained its burden to prove the violations by a preponderance of the evidence. Further, although not the subject of Costello's testimony at the abbreviated hearing and thus not a basis for the trial court's order, the public guardian's representations regarding Kelvion's absences from school constitute independent grounds for concern over Tiffany V.'s compliance with the order of protective supervision.

¶ 26    The court's determination that based on Tiffany V.'s violations, Kelvion and Tylea should be removed from her care and custody does not constitute an abuse of discretion. Tiffany V.'s conduct in leaving Tylea alone and resisting Costello's efforts to check on the children's safety posed a substantial risk of harm to the children, which justified removing them from her care.

¶ 27    For these reasons, we affirm the decision of the trial court.

¶ 28    Affirmed.