NOTICE

Decision filed 06/09/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250072-U

NO. 5-25-0072

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* TRAVON W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-JA-68 |
| | ) | |
| Darnisha J., | ) | Honorable |
| | ) | Robert E. Jacobson, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*: The evidence supports the circuit court's decision to remove the minor from respondent's custody. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2     Respondent, Darnisha J., appeals the circuit court's order removing her son, Travon W., from her custody. Her appointed appellate counsel concluded that there is no reasonably meritorious argument that the court erred by doing so. Accordingly, he filed a motion for leave to withdraw as counsel on appeal along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). He notified respondent of his motion. This court provided her with an opportunity to respond, but she has not done so. After considering the record on appeal and counsel's motion and supporting memorandum, we agree that this appeal presents no arguably

1

meritorious issues. Accordingly, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4       On May 2, 2023, the State filed a petition for adjudication of wardship which alleged that respondent left Travon, who was less than a year old, and his 11-year-old brother, Travis, home while she went to a party. While there, she got so drunk that she could not tell her Uber driver where she lived. The driver called police, who checked on the boys and informed the Department of Children and Family Services (DCFS). DCFS implemented a safety plan. After further investigation, on May 1, 2023, the agency took protective custody of Travon. At a temporary custody hearing, both respondent and Travon's father, Andre W., stipulated to probable cause to believe that Travon was neglected and to an immediate and urgent necessity that he be placed in protective custody.

¶ 5       Lutheran Social Services of Illinois (LSSI) filed a dispositional report, according to which respondent denied having a substance abuse problem. However, LSSI opined that she needed a substance abuse assessment, random drug screens, individual psychotherapy, and a parenting course. She was already enrolled in parenting classes and was employed by an assisted living facility. Meanwhile, Travon was placed with fictive kin, who was adequately caring for him and supervising daily visits with his mother. In a dispositional order dated July 25, 2023, the court found respondent unfit, because she "struggles with substance abuse problems that ha[ve] resulted in her leaving her child unsupervised and without adequate care."

¶ 6       In subsequent months, respondent made progress. By November 2023, she completed parenting classes, tested negative on all drug screens, completed a substance abuse assessment—which recommended no services—and attended AA meetings. By the next hearing, in January

2

2024, she moved to a new apartment, found a new job, attended counseling, and progressed to overnight visits with Travon. By April, all three of her children had been returned to her custody.

¶ 7    As of August 2024, the children remained in respondent's care. However, on July 17, 2024, LSSI opened an investigation based on reports that respondent was "drunk and passed out" while Travon was in her care. She allegedly left a liquor store with "a bag" and was drinking alcohol. According to other reports, she often overslept, resulting in her older son missing a considerable amount of schooling. She reportedly "shows Tra[ ]von love" but "puts him off onto" others, when possible. Nevertheless, LSSI noted that investigators found "no safety concerns." Respondent remained in counseling, continued to test negative on drug screens, and attended AA meetings.

¶ 8    On November 21, 2024, however, LSSI removed the children from respondent's custody and opened a new investigation after learning that she had been removed from a city bus and taken by ambulance to the hospital. She was reportedly so intoxicated she was unable to care for a one-year-old child (Travon) who was with her. Catherine McGlone, an investigator, went to the hospital, but was unable to speak with respondent because she was asleep "and would not wake up," so McGlone took protective custody of Travon. Several people stopped by the hospital to ask about the child. Some suggested that respondent may have suffered a stroke on the bus, but hospital personnel reported that she was "admitted for intoxication."

¶ 9    According to the LSSI report, people gave differing accounts of what occurred that evening. Andre W. said respondent may have suffered a stroke. However, respondent later said she was a "heavy sleeper," had been "very stressed," and, consequently, was unable to wake up. As a result, DCFS implemented a safety plan, pending results of toxicology tests from both Carle Hospital and Rosecrance, an addiction facility.

¶ 10    On December 2, 2024, results of the tests from Rosecrance came back negative, but the agency "indicated" respondent for being intoxicated while caring for a child. On December 16, 2024, DCFS ended the safety plan, and Travon was returned to his mother. However, on December 18, 2024, the investigator learned that respondent lied and that she was in fact intoxicated at the time of the initial event.

¶ 11    The report related that when McGlone met with respondent at her residence, several of respondent's friends confronted her. She felt sufficiently uncomfortable that she called the police. However, she had no immediate concerns about Travon's safety at that point. Police, noting that the situation was becoming increasingly tense and that since McGlone had no immediate concerns about the child's safety, advised her to simply leave the area. After checking with her supervisor, it was decided that Travon would not be removed from respondent's care that day.

¶ 12    Over the next few days, respondent wrote several letters to the trial judge. She complained about her caseworker and the contract agency assigned to her. However, she admitted that she consumed alcohol prior to the November 21, 2024, incident on the bus. She stated that she arranged with a friend to accompany her and Travon home, but that the friend unexpectedly decided to return home. Several acquaintances also submitted letters supporting respondent.

¶ 13    On December 23, 2024, the State filed a motion to remove custody and guardianship of Travon from respondent. The State cited the November 21, 2024, incident, during which respondent "was found unconscious on a[ ] [Mass Transit District] bus with the minor." The motion alleged that, although respondent initially denied drinking alcohol that day and drug tests were negative, she emailed the prosecutor on December 15, 2024, admitting that she had been drinking. However, she subsequently refused to speak with DCFS personnel about the incident. DCFS located Travon and placed him on an amended safety plan. Therefore, the State asked the

court to find an urgent and immediate necessity that custody and guardianship of Travon be removed from respondent.

¶ 14    At a hearing on the motion, the State introduced respondent's medical records from November 21, 2024. Among other things, they showed that, while in the emergency room, she had a blood serum value of 0.309, which converts to a blood alcohol concentration of 0.26. They also showed that she refused a breathalyzer, but that "some alcohol" could be smelled on her. A physician opined, after reviewing the records, "Briefly, 38[-year-old] [female], on bus, drunk[.]"

¶ 15    Robert Duran, a DCFS investigation supervisor, testified that he received a report that respondent had been found "unconscious and could not be *** woken up." He phoned her a couple of days after the incident, and she told him that she had not been drinking that day. She said that she was a heavy sleeper, had a busy work schedule, and she was tired. She declined Duran's request to sign a release for her medical records

¶ 16    After respondent sent an e-mail to the prosecutor, McGlone went to her apartment and tried to get more information about the underlying incident and the e-mail. Over respondent's hearsay objection, Duran said that McGlone phoned him from the apartment, saying that when she spoke with respondent and tried to get her to sign a release, "the situation got loud and heated," and respondent told her to leave. Outside in the hall, there were other people present, making McGlone feel unsafe. The police were called, and McGlone ultimately left. Duran did not know whether Travon was at the residence that night.

¶ 17    The next evening, Duran went to respondent's apartment, and a safety plan was reinstated. Respondent was generally cooperative. Duran did not speak to her about her e-mail to the prosecutor. They discussed the safety plan, and Duran again asked respondent to sign a medical release. Respondent declined to do. The safety plan involved Travon being out of respondent's

5

home while Duran confirmed what had happened on the night of November 21, 2024. He subsequently saw respondent's e-mail to the prosecutor, in which she admitted consuming alcohol that night.

¶ 18 Andre W. testified that, on the night of November 21, 2024, he and respondent visited a couple of friends. He did not see her drinking during that time and had no reason to believe that she was intoxicated. The police called him around 2 a.m., saying that there had been a medical emergency and he needed to pick up his son. However, when he attempted to do so, hospital personnel falsely told him that they did not have Travon. When he asked to speak to a supervisor, they asked him to leave, which he did.

¶ 19 Respondent testified that on the night of November 21, 2024, she had nothing to drink at the first friend's house and only one drink at the second friend's house. Later, however, she said that she did not remember how many drinks she had. She said that she did not have a sleep disorder, but "it is hard to get me up," and she was very tired that night. It was "about 10 something" when she, Travon, and her friend Daminica left the second friend's house. Daminica rode the bus with them to the terminal, where they were to transfer to a different bus. At that point, however, Daminica, for some reason, "changed her mind and went back towards Urbana" rather than get on the second bus with her and Travon. The last thing she remembered before waking up in the hospital was waiting at the terminal to transfer to the second bus.

¶ 20 Since that night, respondent looked into getting substance abuse counseling or treatment at Rosecrance. She wanted to remain sober and safe for Travon. To that point, she had an assessment, which resulted in a recommendation for weekly counseling. She did not recall putting into the e-mail to the prosecutor that she was asleep when Daminica left her and Travon.

¶ 21    The circuit court, noting that the November 21, 2024, incident was similar to that which brought the case into the system in the first place, found that respondent was unfit and unable for reasons other than financial circumstances alone to exercise custody and guardianship of her son. The court thus removed Travon from respondent's care and returned custody to DCFS. The court expressed hope that the November 21, 2024, incident was merely a bump in the road to respondent's recovery and noted that she voluntarily obtained treatment. Nevertheless, the court found it necessary to remove Travon from her custody at least temporarily. Respondent timely appealed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, respondent's appellate counsel concludes that there is no reasonably meritorious issue that could support an appeal. Counsel considered two possible issues but concludes that neither has even arguable merit. We agree.

¶ 24    Section 2-28 of the Juvenile Court Act of 1987 provides that "any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person." 705 ILCS 405/2-28(4) (West 2022). Hearings conducted under that section "are simply further dispositional hearings." *In re S.M.*, 223 Ill. App. 3d 543, 547 (1992). "The rules of evidence that apply to dispositional hearings *** also apply to hearings conducted on petitions seeking relief under section 2-28." *Id.* Moreover, proceedings under section 2-28 "do not implicate the same procedural requirements applicable to petitions filed for relief under the Act prior to adjudicatory hearings." *Id.*

¶ 25    Counsel first suggests that there is no merit to a potential argument that the circuit court erred by overruling respondent's hearsay objection to Duran's testimony about his conversation with McGlone. Although counsel notes that Duran's statements about his conversation with

McGlone are "textbook examples of hearsay," he also observes that at a dispositional hearing such as the one in question, "the court may rely on all evidence that is 'helpful in determining [the relevant issues],' including oral and written reports, 'even though not competent for the purposes [of] the adjudicatory hearing.' " *In re M.D.*, 2022 IL App (4th) 210288, ¶ 63 (quoting 705 ILCS 405/2-22(1) (West 2020)). "Essentially, there are no rules of evidence governing what the court may receive and consider at the dispositional hearing." *Id.* (citing *In re D.L.*, 226 Ill. App. 3d 177, 187-88 (1992)). Thus, the court was expressly permitted to consider hearsay at this stage of the proceedings.

¶ 26    Counsel further concludes that there is no nonfrivolous argument that the court erred in its ultimate conclusion to remove Travon from respondent's custody. When a child is the ward of the court and under its protection, section 2-28 allows the court to vacate any previous dispositional order and "issue any new dispositional order that it might have made," if it finds that a change in circumstances has occurred necessitating such action. *In re P.P.*, 261 Ill. App. 3d 598, 602 (1994). On appeal, the trial court's order will not be reversed unless it is against the manifest weight of the evidence. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 41.

¶ 27    Here, the evidence supported the court's decision to again remove Travon from respondent's custody. The incident that originally brought Travon into DCFS custody involved respondent leaving him at home in the care of a teenage sibling while she went drinking. She made considerable progress after that incident, to the extent of having Travon returned to her care and custody. However, the agencies continued to receive reports that respondent was continuing to drink, sometimes to excess. However, the agencies did not have evidence that Travon was in danger.

¶ 28    These reports culminated with the incident on November 21, 2024, when respondent passed out on a bus while Travon was with her. After the incident, she lied about consuming alcohol, refused to consent to the release of her hospital records, and became belligerent with DCFS personnel. While this represented a single incident against a backdrop of progress, it was, as the court noted, a significant incident compromising Travon's safety and could not simply be ignored. For these reasons, we agree with appellate counsel's conclusion that there is no reasonably meritorious issue that could support an appeal.

¶ 29                                III. CONCLUSION

¶ 30    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the Champaign County circuit court's judgment.

¶ 31    Motion granted; judgment affirmed.