NOTICE

Decision filed 08/23/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220243-U

NO. 5-22-0243

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MESSIAH C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 21-JA-92 |
| v. | ) | |
| | ) | |
| Sampson C., | ) | Honorable |
| | ) | Matthew D. Lee, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1　*Held*:　The circuit court did not err in finding respondent unfit and unable to parent his child and awarding temporary custody of the minor to DCFS. As any argument to the contrary lacks merit, we grant respondent's appointed counsel on appeal leave to withdraw and affirm the judgment of the circuit court.

¶ 2　Respondent Sampson C. appeals the circuit court's dispositional order finding him unfit and unable to parent his daughter, Messiah C., and granting custody and guardianship of the child to the Illinois Department of Children and Family Services (DCFS). Sampson's appointed attorney on appeal concluded this appeal lacks merit. Accordingly, he filed a motion to withdraw (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. He provided respondent with a copy of the *Anders* motion and brief. By order dated June 14, 2022, this court

1

granted Sampson until July 26, 2022, to respond to his attorney's motion. No response was filed. Having read the *Anders* motion and brief, and examined the record on appeal, we too conclude this appeal lacks merit and find no potential grounds for appeal. Accordingly, we grant the motion to withdraw and affirm the judgment of the circuit court.

¶ 3                                BACKGROUND

¶ 4      Messiah C. was born December 23, 2021, and DCFS was notified that her mother, Shanni J., admitted to using cocaine during her pregnancy and had her parental rights to her other children terminated. Following an investigation, DCFS took protective custody of Messiah on December 27, 2021.

¶ 5      On December 28, 2021, the State filed a petition for adjudication of wardship. Count I of the petition alleged that Messiah was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1986 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)) because Shanni had failed to correct the conditions resulting in a prior adjudication of parental unfitness in Champaign County case No. 2015-JA-38, involving Messiah's sibling. Count II alleged that Messiah was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (*id.*) because when she resided with Shanni and/or Sampson, she was in an environment that exposed her to substance abuse. Count III alleged that Messiah was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (*id.*) because her environment, when she resided with Shanni and/or Sampson, exposed her to domestic violence.

¶ 6      The shelter care hearing was held on December 28, 2021. Both parents appeared and were appointed counsel. Shanni stipulated to temporary custody with DCFS based on the State's factual basis that included previous terminations of her parental rights in case No. 2015-JA-38 and other cases in Minnesota, as well as concerns about her mental health and inability to care for herself

2

and Messiah, domestic violence, and substance abuse. Sampson did not stipulate, so the court conducted a hearing.

¶ 7     The court took judicial notice of the court file in case No. 2015-JA-38 as well as case No. 2018-CF-183, which involved Sampson's aggravated domestic battery of another woman. The court also took judicial notice, over respondent's objection, of a dispositional report in the parental-rights case that suggested domestic violence between respondent and Shanni. Thereafter, Sampson stated he never gave consent to dig through his information.

¶ 8     The State called April Wilson, a DCFS child protection investigator, who was assigned to Messiah's case. Following Messiah's birth, Ms. Wilson spoke with the nurses who had concerns that they had to constantly remind both parents of the basic necessities like feeding and changing the baby. Sampson refused to answer most of her questions. However, he said that he lived at a shelter because their former apartment had become a murder scene. He admitted using a "substance," but would not state what it was. Shanni stated that Sampson used crack six months earlier.

¶ 9     Ms. Wilson also reviewed Sampson's history with DCFS and testified that the records revealed an incident in 2018 when he was taken to the hospital after cutting himself in front of children. Thereafter, he was arrested for aggravated assault, sexual assault, and domestic battery. She had no information or evidence that Sampson completed services for substance abuse or domestic battery.

¶ 10     Sampson testified that he was the father and, despite both he and Shanni currently living in a shelter, had a plan to care for Messiah. They were working to find their own place, and in the interim, Messiah would stay with Shanni's mother. He was currently working two jobs, allowing him to make support payments to Shanni's mother. He believed he had the ability to make custodial

3

decisions and legal decisions regarding Messiah. He further testified that he was required to provide drug drops at the shelter, and he passed those tests. He agreed that he and Shanni were planning to live together once they found a home. Following Sampson's testimony, the court found probable cause to satisfy all three counts in the petition and that the matter of immediate and urgent necessity to place Messiah in shelter care was a somewhat closer question. The court was impressed that Sampson was taking the steps necessary to become the father he wants to be but ultimately found it was in the best interest of Messiah for the State to take temporary custody of the child.

¶ 11    On January 11, 2022, the State filed an amended petition for adjudication of abuse, neglect, or dependency with the same allegations of neglect. On March 15, 2022, Shanni stipulated to the allegations in count I, and the State dismissed the allegations in counts II and III as to Shanni.

¶ 12    The case proceeded to the adjudicatory hearing related to Sampson on March 22, 2022. The State submitted Shanni's June 30, 2021, psychiatric evaluation into evidence. The report indicated that Shanni stopped taking her HIV and psychiatric medications because she "didn't want them to hurt [her] baby" and was instead using cocaine, crack cocaine, and cannabis for relief from her depression. The report further indicated that Shanni lived with her boyfriend, and they used drugs together, stating drugs were freely available in their home and everywhere. The report further indicated that Shanni's boyfriend was recently admitted to Pavilion and Shanni no longer wanted to live with him. Shanni further stated that she could not move in with her mother. She was depressed for at least the past two weeks, with occasional suicidal thoughts. Diagnoses included schizophrenia, bipolar disorder, depression, and "multiple substance abuse disorders." No objection to the report was made by Sampson's counsel and the report was admitted.

¶ 13    The State called Ms. Wilson, who again testified as to how she was brought into the case. She stated that when she asked Sampson about substance abuse, he replied that he had "used about six months prior," but had been "clean" ever since. She stated that Shanni's responses supported Sampson's claim. Ms. Wilson was unaware of any treatment Sampson received. She testified that Sampson was ordered to perform drug testing six times. He appeared once and failed to appear for the others. The one test he did perform, which was between December 28, 2021, and the current date, was positive for THC.

¶ 14    Following Ms. Wilson's testimony, Sampson moved for a directed finding as to count III as there was no testimony regarding domestic violence. The State conceded and the court dismissed count III. Thereafter, Sampson testified that he had not used drugs since learning that Shanni was pregnant, about six months earlier. He described his efforts at substance abuse treatment. He left treatment at the Salvation Army because they did not have an interpreter to address his deafness and he became frustrated. He later sought treatment at Pavilion and at Chicago Behavioral and completed those treatments. Both were seven-day programs. The most recent treatment he sought was at New Choice, but he left that treatment because they did not have an interpreter. All of this treatment was prior to Messiah's birth. Sampson further testified that he and Shanni were now "just friends." Following arguments by the parties, the court found count II was not proven, but noted Shanni stipulated to the allegations in count I, that involved her failure to correct the conditions resulting in a prior adjudication of parental unfitness involving Messiah's sibling. The case was set for a dispositional hearing on April 12, 2022.

¶ 15    On April 6, 2022, the Center for Youth and Family Services (CYFS) filed a dispositional report. The report noted that Sampson was an "indicated perpetrator" in an allegation of "Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare of a Child" for

5

allegedly raping and choking a woman and threatening to kill her children before cutting himself. He was later convicted of assault. Sampson is congenitally deaf. He was raised in foster care in Georgia until his father regained custody of him at age 11 or 12. He did not complete high school. He reported diagnoses of bipolar disorder, depression, and schizophrenia in 2018 and outlined his history of substance abuse treatment.

¶ 16 Currently, Sampson and Shanni were no longer in a romantic relationship, and Sampson continued to live in a shelter. He stated he was working as a "freelance contractor" via an app on his phone. He did not describe his current work responsibilities but stated he was affiliated with the Nashville Music Awards and was a "trader" of unspecified objects. No paystub was provided regarding Sampson's employment.

¶ 17 Twice weekly, two-hour visitations with Messiah were initially scheduled, but Sampson requested the visits be reduced to once per week. He frequently became frustrated during visitation and left early, claiming that DCFS was violating his rights and stealing his child. He missed two visitations due to work and on one visit claimed Messiah was not his child. He was referred for parenting, domestic violence, substance abuse, and individual counseling services but had yet to complete the assessment for substance abuse and the referral had not yet been made for individual counseling.

¶ 18 Messiah was placed with her maternal grandmother, to whom she had grown attached. Messiah is hearing impaired and has gastric intolerance issues but was being well cared for. The report recommended DCFS be granted custody and guardianship of Messiah while the parents participated in recommended services.

¶ 19 At the dispositional hearing, the parties stipulated to the report. Through his lawyer, Sampson agreed with CYFS's recommendations. The court noted Sampson was residing in a

6

shelter, had various mental health diagnoses, was not consistently participating in drug testing, and was recommended for several services which he had not started. The court found Sampson unfit and unable, for reasons other than financial, to have custody of Messiah. Sampson timely appealed.

¶ 20                                                    ANALYSIS

¶ 21    Sampson's appointed counsel identifies four possible issues that could be raised but concludes none of the issues have any arguable merit. We agree.

¶ 22    Counsel first contends that no meritorious claim can be made regarding the trial court's admission of hearsay evidence by considering a dispositional report from a different case at the shelter care hearing. There, the trial court took notice, over Sampson's objection, of a dispositional report in a different parental rights case suggesting domestic violence between Sampson and Shanni.

¶ 23    " 'Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Caffey*, 205 Ill. 2d 52, 88-89 (2001) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357 (1997)). Here, the alleged hearsay was created by requesting the court take judicial notice of a dispositional report involving a different child in a different case. However, even if the court erred in considering hearsay at the temporary custody hearing, any issues regarding that hearing became moot when the court subsequently found Messiah neglected and granted custody to DCFS. *In re Edward T.*, 343 Ill. App. 3d 778, 792 (2003) ("appeal of findings made in a temporary custody hearing is moot where there is a subsequent adjudication of wardship supported by adequate evidence"); see *In re A.D.W.*, 278 Ill. App. 3d 476, 480 (1996). As both the adjudicatory and dispositional hearings occurred, any challenge to the court's admission of hearsay evidence at the temporary custody hearing has no arguable merit.

7

¶ 24 Counsel next contends no meritorious argument exists to support a showing that the court's finding that Messiah was neglected was against the manifest weight of the evidence. "[T]he purpose of an adjudicatory hearing is 'to determine whether the allegations of a petition *** that a minor under 18 years of age is *** neglected *** are supported by a preponderance of the evidence.' " *In re Arthur H.*, 212 Ill. 2d 441, 465 (2004) (quoting 705 ILCS 405/1-3(1) (West 2000)). In so doing, the court should focus solely on whether the child has been neglected, not on assigning blame for the neglect. *Id.* at 467. "The State bears the burden of proving neglect, dependence or abuse by a preponderance of the evidence ***." *In re N.B.*, 191 Ill. 2d 338, 343 (2000). We will not reverse a circuit "court's finding of neglect unless it is against the manifest weight of the evidence." *In re Edward T.*, 343 Ill. App. 3d 778, 794 (2003).

¶ 25 Here, Shanni admitted the allegations of the amended petition that Messiah's environment was injurious to her welfare when she resided with her, and she had failed to correct the conditions, resulting in a prior finding of parental unfitness in case No. 2015-JA-38. The State further established that Shanni continued to use cocaine, as recently as December 2021, while pregnant with Messiah. While the court made no specific finding that Sampson was culpable in Messiah's neglect, such finding was not required as the court's finding Messiah neglected was supported by the evidence.

¶ 26 Counsel next contends that there is no merit to any argument that the court's finding Sampson unfit and unable to parent Messiah, following the dispositional hearing, was against the manifest weight of the evidence. Following a finding of neglect, the court conducts a dispositional hearing to determine "whether it is in the best interests of the minor and the public that [the minor] be made a ward of the court, and, if [the minor] is to be made a ward of the court, the court shall

8

determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2020).

¶ 27    "In all dispositional hearings, '[t]he best interests of the child is the paramount consideration to which no other takes precedence.' " *In re Kelvion V.*, 2014 IL App (1st) 140965, ¶ 23 (quoting *In re Austin W.*, 214 Ill. 2d 31, 46 (2005)). "The party requesting a finding that a parent is unable to care for, protect, train or discipline her children must establish the parent's inability by a preponderance of the evidence." *Id.* (citing *In re D.W.*, 386 Ill. App. 3d 124, 139 (2008)). "We review the trial court's decision regarding the proper disposition for an abuse of discretion" and will reverse the dispositional order only if it is against the manifest weight of the evidence. *Id.*

¶ 28    Here, the only evidence presented at the hearing was the dispositional report prepared by CYFS which recommended DCFS be granted custody and guardianship of Messiah while Sampson participated in recommended services. Sampson, through counsel, stipulated to the report. Counsel noted that "the report indicates there are issues that need to be addressed. For that reason, we would accept the recommendations of the report at this time." Given that Sampson stipulated to the report's findings and recommendations, and presented no contrary evidence, he cannot raise any successful challenge to the circuit court's dispositional order.

¶ 29    Finally, counsel contends that no meritorious argument can be raised to support Sampson's claim that his constitutional rights were violated during the proceedings. During the dispositional hearing, Sampson stated that he wanted to appeal because "this is violating my rights." However, upon review of the record, counsel found no constitutional violation and neither have we.

¶ 30    The court conducted the proceedings pursuant to the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2020)), compliance with which, along with fundamental fairness, has been held to

9

comport with due process. *In re J.M.*, 2020 IL App (2d) 190806, ¶ 40. Respondent obviously had notice of the proceedings and was represented by counsel. He appeared and testified when appropriate. As such, the proceedings did not violate his constitutional rights.

¶ 31                                    CONCLUSION

¶ 32    For the foregoing reasons, we grant counsel's *Anders* motion and affirm the judgment of the circuit court.


¶ 33    Motion granted; judgment affirmed.