NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210182-U

NO. 4-21-0182

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 10, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
|       Petitioner-Appellee, | ) | No. 19JA106 |
|       v. | ) | |
| Angela N., | ) | Honorable |
|       Respondent-Appellant). | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's neglect finding was not against the manifest weight of the evidence.

¶ 2    In September 2019, the State filed a petition for adjudication of wardship as to M.B. (born in July 2017), the minor child of respondent, Angela N., asserting the minor child was neglected. After a November 2020 adjudicatory hearing, the Vermilion County circuit court found the minor child was neglected as alleged in two counts of the State's petition. After a March 2021 dispositional hearing, the court (1) found respondent unfit, unwilling, and unable to care for the minor child; (2) made the minor child a ward of the court; and (3) placed the minor child's custody and guardianship with the Department of Children and Family Services (DCFS).

¶ 3    Respondent appeals, contending the circuit court erred by finding the minor child was neglected. We affirm.

¶ 4                                  I. BACKGROUND

¶ 5         The minor child's father is Jerry B., who is not a party to this appeal.  The State's

September 2019 petition alleged M.B. was neglected pursuant to section 2-3(1)(a) of the Juvenile

Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a) (West Supp. 2019)), in that

M.B. was not receiving the proper or necessary support or education as required by the law, or

medical or other remedial care recognized under State law as necessary for her well-being (count

IV).  It also contended M.B. was neglected under section 2-3(1)(b) of the Juvenile Court Act

(705 ILCS 405/2-3(1)(b) (West Supp. 2019)), in that her environment was injurious to her

welfare due to (1) respondent's substance abuse (count I), (2) Jerry's substance abuse (count II),

(3) Jerry's and/or respondent's criminal activity (count III), and (4) Jerry's and/or respondent's

failure to engage in and complete substance abuse services and other services in order to remedy

the conditions that required their other minor children to go into care in Vermilion County case

No. 14-JA-133 (count V).

¶ 6         On November 20, 2020, the circuit court held the adjudicatory hearing.  The State

presented the testimony of (1) Stefanie Verando, a Vermilion County probation officer;

(2) Nathan Huckstadt, a Vermilion County probation officer; (3) Jill Miller, the caseworker in

case No. 14-JA-133; (4) Kristine Givens, a DCFS investigator; and (5) Jerald Feingold, a DCFS

investigator.  At the State's request, the circuit court took judicial notice of the orders and

findings in case No. 14-JA-133.  Respondent and Jerry did not present any evidence.  The

guardian *ad litem* presented Jerry's testimony.  The evidence relevant to the issues on appeal

follows.

¶ 7         Huckstadt testified part of his duties as a probation officer was administering drug

tests.  On July 2, 2020, he administered a drug test to Jerry, and Jerry tested positive for cocaine

and methamphetamine. Huckstadt had never been Jerry's probation officer.

¶ 8       Miller testified she was the caseworker in a prior juvenile case involving two other minor children, Jerry, and respondent. In that case, Jerry's recommended services included substance abuse treatment, parenting classes, individual counseling, and a psychological evaluation. Jerry never completed a psychological evaluation, was unsuccessfully discharged from individual counseling, was unsuccessfully discharged from parenting classes, and failed to do intensive outpatient substance abuse treatment. After residential substance abuse treatment, Jerry tested positive for cocaine in March 2016. To Miller's knowledge, Jerry did not resume substance abuse treatment and was never drug free. Additionally, Miller testified Jerry threw a table at her during a child and family team meeting. Jerry believed DCFS took the children to sell them and Miller was involved in the sale.

¶ 9       As to respondent, Miller testified the recommended services for respondent included substance abuse treatment, parenting classes, and individual counseling. Respondent did attend some counseling sessions and parenting classes but was unsuccessfully discharged from both. Respondent attended residential treatment for substance abuse but did not follow through with the recommended services once she was released. After respondent's release from treatment, she tested positive twice for cocaine. Miller was unaware of respondent reengaging in substance abuse treatment after her positive drug tests.

¶ 10      Miller further testified the two minor children in the prior case could not be safely returned to respondent or Jerry in 2016. In her opinion, respondent and Jerry both needed significant services before either one of them could safely parent, and both of them never completed any services. Miller admitted she did not have any contact with respondent or Jerry after the termination of their parental rights in June 2016.

¶ 11        Givens testified she received a hotline call on August 1, 2019, alleging respondent and Jerry were living in a stolen vehicle and using methamphetamine and cocaine. As part of her investigation, Givens spoke to Jerry on the telephone on September 20, 2019. She asked Jerry to complete a drug screen the following day. Jerry did not complete the drug screen. Givens further testified Jerry denied being homeless and could provide documentation of that. During a subsequent telephone call on September 23, 2019, Jerry informed Givens he had completed the drug screen somewhere else and would get her the documentation. Jerry did not provide the documentation of the drug test or his residence. Givens described Jerry's demeanor during the second telephone call as combative and erratic and noted he had trouble concentrating and staying on task. Givens testified Jerry seemed impaired. During previous conversations with Jerry, he was cooperative. Before this case, Jerry had not been indicated on any reports involving M.B. Respondent had been indicated earlier in 2019 for "risk of harm, environment injurious to the health and welfare to her child, [M.B.], based on her substance abuse." Respondent and Jerry's other two children had been found neglected based on an environment injurious to their welfare due to respondent's substance abuse.

¶ 12        When Givens had made an indicated report earlier in 2019 based on respondent's substance abuse, Jerry was living with his mother. Givens had never administered a drug test to Jerry. Givens also testified a person living in a hotel is not considered homeless. Additionally, Givens testified M.B. appeared healthy when she was taken into care.

¶ 13        Feingold testified he was the parallel investigator for this matter. He spoke to Jerry on September 11, 2019, at the Champaign Police Department. Respondent had been arrested that night, and Jerry stated he had done nothing wrong. Jerry noted he and M.B. were living with his mother, and respondent was living with her family. Feingold later testified Jerry

stated they had been staying at a hotel in Paris, Illinois. Feingold testified Jerry did not appear to be intoxicated when Jerry spoke with him. Feingold took protective custody of M.B. that night, and she appeared to be healthy. Feingold noted both respondent and M.B. were listed as missing and endangered persons in the Illinois State Police system. The taking of protective custody had already been authorized before Feingold went to the police station.

¶ 14　　　　Additionally, Feingold spoke with respondent the day after her arrest. She explained the vehicle was not stolen and "things were messed up" with Enterprise Rent-A-Car in Danville, Illinois. Respondent denied using drugs. She also told Feingold she and Jerry had been living in a motel in Danville and had recently moved to a hotel in Paris, Illinois. Respondent said she could provide receipts for the hotel and payments on the car.

¶ 15　　　　After the State rested, both Jerry and respondent made motions for a directed finding. In response, the State withdrew count III. The court dismissed count IV and denied the motion as to the other counts.

¶ 16　　　　Jerry testified and admitted he used illegal substances when M.B. was not in his presence. Jerry acknowledged, if he were to be drug tested after the adjudicatory hearing, it would be "dirty." Jerry had used methamphetamine two days before the hearing. He also admitted he stated at the July 2, 2020, hearing, a drug test on that day would be dirty. Jerry further testified he had not seen M.B. for a year and a half. As to the prior case, Jerry testified he had done a psychological evaluation the "first time around." He also had completed both inpatient and outpatient substance abuse treatment. Last, Jerry admitted he had a substance abuse issue and was "trying to get it back in remission."

¶ 17　　　　After hearing the parties' arguments, the circuit court found the State had proved the allegations in counts II and V but not count I. The court noted the bases for its finding were

the evidence of both parents' (1) failure to complete services in case No. 14-JA-133, (2) continued need for treatment, and (3) longstanding addiction issues.

¶ 18    On March 25, 2021, the circuit court held the dispositional hearing. The State presented the testimony of Amy Fellers, the caseworker for this case. The State recommended M.B. be made a ward of the court, DCFS be granted guardianship, and the permanency goal be substitute care. The guardian *ad litem* concurred with the State's recommendation. Jerry asserted M.B. should be returned home immediately. On March 26, 2021, the court entered a written dispositional order (1) finding respondent unfit, unwilling, and unable to care for the minor child, (2) making the minor child a ward of the court, and (3) placing the minor child's custody and guardianship with DCFS. The court entered a permanency goal of return home in 12 months.

¶ 19    On April 1, 2021, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). Thus, this court has jurisdiction of respondent's appeal under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016). See *In re Austin W.*, 214 Ill. 2d 31, 43-44, 823 N.E.2d 572, 580 (2005), *abrogated on other grounds by In re M.M.*, 2016 IL 119932, ¶ 31, 72 N.E.3d 260 (noting "dispositional orders are generally considered 'final' for the purposes of appeal").

¶ 20                                II. ANALYSIS

¶ 21    The Juvenile Court Act provides a two-step process the circuit court must utilize to decide whether the minor child should become a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. Step one of the process is the adjudicatory hearing, at which the

court considers only whether the minor child is abused, neglected, or dependent. See 705 ILCS 405/2-18(1) (West 2018); *A.P.*, 2012 IL 113875, ¶ 19. If the circuit court determines the minor child is abused, neglected, or dependent at the adjudicatory hearing, then the court holds a dispositional hearing to determine whether it is consistent with the health, safety, and best interests of the minor child and the public for the minor child to be made a ward of the court. *A.P.*, 2012 IL 113875, ¶ 21.

¶ 22        Here, respondent challenges only the first step. The State bears the burden of proving a neglect allegation by a preponderance of the evidence, which means it must show the allegations are more probably true than not. See *A.P.*, 2012 IL 113875, ¶ 17. The State must only prove a single ground of abuse, neglect, or dependency to move the wardship proceedings to the second step. See *In re Faith B.*, 216 Ill. 2d 1, 14, 832 N.E.2d 152, 159 (2005) (noting the State need only prove one ground for neglect and thus this court may affirm if any of the circuit court's bases for a neglect finding are upheld). On review, this court will not reverse a circuit court's neglect or abuse finding unless it is against the manifest weight of the evidence. See *A.P.*, 2012 IL 113875, ¶ 17. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *A.P.*, 2012 IL 113875, ¶ 17.

¶ 23        In this case, the circuit court found the minor child was neglected under section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West Supp. 2019)), which provides a neglected minor is "any minor under 18 years of age *** whose environment is injurious to his or her welfare." Our supreme court has explained the terms "neglect" and "injurious" as follows:

> "Generally, neglect is defined as the failure to exercise the care that circumstances justly demand. [Citation.] This does not mean, however, that the term neglect is limited to a narrow definition. [Citation.] As this court has long held, neglect

encompasses wilful as well as unintentional disregard of duty. It is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes. [Citation.] Similarly, the term injurious environment has been recognized by our courts as an amorphous concept that cannot be defined with particularity. [Citation.] Generally, however, the term injurious environment has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children. [Citation.]" (Internal quotation marks omitted.) *A.P.*, 2012 IL 113875, ¶ 22.

¶ 24 Respondent first asserts the State failed to prove DCFS had probable cause to remove M.B. from respondent's custody from the start. Respondent's argument challenges the temporary custody order, in which the circuit court found probable cause existed for the filing of the wardship petition. When a subsequent adjudication of wardship is supported by adequate evidence, an appeal of the findings made during the temporary custody hearing is generally moot. *In re Edward T.*, 343 Ill. App. 3d 778, 792, 799 N.E.2d 304, 315 (2003). As explained below, the State presented adequate evidence to support the adjudication and disposition in this case. Thus, any contention of error regarding the temporary custody hearing and written order is moot. *Edward T.*, 343 Ill. App. 3d at 792, 799 N.E.2d at 316.

¶ 25 Respondent further argues the State did not show the minor child's environment was injurious to her welfare. She asserts the State failed to prove she (1) did not complete services in the previous case, (2) refused to participate in services in this case, and (3) continued to have a substance abuse problem that created an environment injurious to the minor child's welfare. The State contends the circuit court did not err in finding M.B. neglected.

¶ 26    As to her alleged substance abuse problem, respondent contends the circuit court erred by finding M.B. neglected as a result of her substance abuse. However, the court found the State failed to prove that allegation. What the court did find was M.B. was neglected based on an injurious environment due to Jerry's substance abuse. Respondent does not assert that finding was against the manifest weight of the evidence. After reviewing the evidence, we find the evidence was sufficient to support the court's neglect finding based on Jerry's substance abuse. While isolated incidents of a parent's drug usage do not necessarily pose a danger to the minor child, "obviously an ongoing pattern of substance abuse can create an injurious environment." *In re Z.Z.*, 312 Ill. App. 3d 800, 805, 727 N.E.2d 667, 671 (2000). In the previous juvenile case, Jerry had failed to successfully complete intensive outpatient substance abuse treatment and tested positive for cocaine in 2016 after he had done inpatient substance abuse treatment. In July 2020, Jerry tested positive for both cocaine and methamphetamine. Jerry himself admitted he used methamphetamine two days before the adjudicatory hearing and used it before the previous hearing as well. Jerry further acknowledged he had a substance abuse issue and was "trying to get it back in remission." Thus, we find the State's evidence was sufficient to show Jerry had a continuing substance abuse problem. Moreover, the fact M.B. appeared healthy when she was taken into custody does not preclude a finding of abuse. Givens testified Jerry seemed impaired during her second telephone conversation with him. She described Jerry's demeanor as combative and erratic and noted he had trouble concentrating and staying on task. Moreover, the circuit court was not required to believe Jerry's self-serving testimony he only used illegal substances when M.B. was not around.

¶ 27    Accordingly, we find the circuit court's conclusion M.B. was neglected based on an injurious environment resulting from Jerry's substance abuse was not against the manifest

weight of the evidence. Since the State need only prove a single ground of abuse, neglect, or dependency to move the wardship proceedings to the second step, we do not address respondent's arguments about the other ground for the neglect finding. See *Faith B.*, 216 Ill. 2d at 14, 832 N.E.2d at 159.

¶ 28    As to the dispositional order, respondent does not raise any claims of error. We note the State's evidence was sufficient to support the circuit court's dispositional order. The evidence showed respondent and Jerry had not visited M.B. while she was in care and had not even completed an integrated assessment. The caseworker had been unable to refer both parents for services due to difficulties with communication and their refusal to sign consent forms. While respondent and Jerry blamed the agency for their failures, the court found their failures were due to respondent's and Jerry's conduct and not the agency's actions.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we affirm the Vermilion County circuit court's judgment.

¶ 31    Affirmed.