NOTICE
Decision filed 09/27/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230334-U

NOS. 5-23-0334, 5-23-0335, 5-23-0337 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* J.N., A.N., and X.N., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 22-JA-133, 22-JA-134, |
| | ) | 22-JA-135 |
| Valeria G., | ) | |
| | ) | Honorable Brett N. Olmstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court where the circuit court's denial of a continuance of the dispositional hearing was not an abuse of discretion, the circuit court's finding that the respondent was unfit was not contrary to the manifest weight of the evidence, and the removal of the minor children from the guardianship and custody of the respondent was not an abuse of discretion.

¶ 2    The respondent, Valeria G., is the natural mother of J.N., A.N., and X.N.[1] (minor children). On April 26, 2023, the circuit court conducted a dispositional hearing. Upon completion of the hearing, the circuit court found the respondent unfit or unable, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minor children. The circuit court further found that the health, safety, and best interests of the minor children would be jeopardized

_____

[1]J.N. born July 2017, A.N. born March 2019, and X.N. born August 2021.

1

if the minor children remained in the custody of the respondent. As such, the circuit court found that it was in the best interests of the minor children and the public that the minor children be made wards of the court. The circuit court then removed custody and guardianship of the minor children from the respondent and placed custody and guardianship of the minor children with the guardianship administrator of the Illinois Department of Children and Family Services (DCFS).

¶ 3     The respondent appeals the circuit court's judgment arguing that the circuit court abused its discretion in failing to grant a continuance of the dispositional hearing. The respondent also argues that the circuit court's finding that the respondent was unfit or unable to care for the minor children was against the manifest weight of the evidence, and that the circuit court abused its discretion in removing guardianship and custody of the minor children from the respondent. For the following reasons, we affirm the judgment of the circuit court of Champaign County.

¶ 4                         I. BACKGROUND

¶ 5     On September 1, 2020, the respondent was involved in a domestic violence incident with the minor children's father. The respondent and the father were both arrested, and the charges were later dropped. The minor children were present during the incident but were not taken into temporary custody. DCFS opened an intact case and attempted to engage the respondent in services. The respondent, however, refused services and refused to cooperate with DCFS.

¶ 6     On November 29, 2022, a subsequent incident of domestic violence between the respondent and the father was reported. When law enforcement arrived, they were not permitted into the home and had to conduct a conversation with the father through a window. The respondent later denied any domestic violence had occurred and stated that she did not allow law enforcement into the home because the last time she had allowed them in, both parties had been arrested. The respondent again declined services, would not allow anyone into the home, and requested that the DCFS case be closed.

2

¶ 7       Another information report was received by DCFS on December 9, 2022. The information report stated that J.N. had been absent from school and that there had been unsuccessful attempts by the school at contacting the family. A caseworker attempted to contact the respondent, but there was no response to telephone calls. The caseworker went to the family's last known address and found the residence empty. The caseworker contacted J.N.'s school and was informed that the school had made contact with the respondent, and that she had refused to inform the school where the family had moved or to what school J.N. was being transferred.

¶ 8       On December 13, 2022, the State filed a juvenile petition[2] pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq*. (West 2022)). The juvenile petition alleged that the minor children were neglected as defined in section 2-3(1)(b) of the Act (*id*. § 2-3(1)(b)), due to being in an injurious environment that exposed the minor children to domestic violence.

¶ 9       On December 15, 2022, a caseworker was able to contact the respondent, who told the caseworker that the family had moved into the respondent's mother's residence. The caseworker notified the respondent regarding the filing of the State's petition. The caseworker stated that the respondent became frustrated, again asked that the DCFS case be closed, and disconnected the call. The caseworker was able to locate the respondent's mother's address through the DCFS's database, and again contacted the respondent. The respondent declined services and also declined a home and safety check.

¶ 10      A subsequent visit by the caseworker to the respondent's mother's home on January 5, 2023, demonstrated that the family no longer resided there. Also on January 5, 2023, DCFS received a report that J.N. and A.N. were registered for school and that the respondent had

---

[2]A juvenile petition was filed on behalf of J.N. in matter 22-JA-133, on behalf of A.N. in matter 22-JA-134, and on behalf of X.N. in matter 22-JA-135. We will refer to the filings on behalf of the minor children collectively without separately indicating to which minor child the filing applied unless the filings differ, or such clarification is needed for our analysis. We also note that the juvenile petitions were filed against the minor children's natural father, but the natural father's rights are not at issue in this appeal.

informed the school not to allow DCFS to speak with the minor children. A caseworker contacted the respondent who continued to refuse services, refused to allow the caseworker in the family's residence, and was defensive and hostile with the caseworker.

¶ 11    On January 19, 2023, a caseworker met with the respondent at the respondent's mother's home. The respondent had moved back into her mother's residence with the minor children and the caseworker was allowed into the home on this visit. The respondent reported that the father was using crack cocaine and that he often yelled and hit the minor children. J.N. and A.N. confirmed the allegations. The respondent further informed the caseworker that the reason she had been uncooperative with DCFS was due to the father telling her not to allow a caseworker into the home and not to participate in any services. The respondent then stated that she was now willing to participate in all recommended services and further stated that her attorney had advised her to participate in services.

¶ 12    On January 27, 2023, the caseworker spoke with the father who, at this point, had also moved back into the respondent's mother's residence. The father stated that the only reason that he had not cooperated with DCFS was that the respondent had encouraged him not to cooperate. The father stated that the respondent "just wants to have freedom and go out and party."

¶ 13    On February 2, 2023, the circuit court entered an admonition order. The order stated that the respondent had personally appeared before the circuit court and was represented by counsel. The order further stated that the circuit court had advised the respondent that she must cooperate with DCFS and comply with the terms of the service plan or risk the termination of her parental rights.

¶ 14    A caseworker attempted an unannounced visit with the family in late March 2023; however, the respondent had gotten upset since the family was not given a set time and date for the visit. The caseworker again attempted a visit on March 30, 2023, but no contact was made.

4

The following week, a regional director attempted to visit the family but was at the wrong address and no contact was made.

¶ 15 On March 31, 2023, the circuit court conducted an adjudication hearing. The respondent was present with counsel and admitted and stipulated to the allegations contained in the juvenile petition. Based on respondent's stipulation and admissions, the circuit court adjudicated the minor children as neglected as defined in section 2-3(1)(b) of the Act (*id*.), in that respondent's conduct had placed the minor children in an injurious environment. The circuit court did not order temporary custody of the minor children but directed DCFS to prepare an investigation report. The circuit court admonished the respondent to cooperate with DCFS in the preparation of the report, to include providing any information that DCFS requested and providing any authorizations for release of information needed so that DCFS could gather information from third parties.

¶ 16 On April 12, 2023, a caseworker again attempted to visit the family at the respondent's mother's residence, which was the last address provided to DCFS by the respondent. The respondent's mother indicated that the family had moved when she had requested that they contribute to the rent. The respondent's mother further reported that the family had moved to Arthur, Illinois, and were residing with an individual who was on house arrest due to a drug conspiracy charge. According to the respondent's mother, the individual on house arrest was providing the minor children's childcare. The caseworker made multiple attempts to contact the respondent through text and calls but was unsuccessful at making contact.

¶ 17 On April 20, 2023, Bethany Christian Services (BCS), on behalf of DCFS, filed a dispositional report with the circuit court. The BCS report stated that the caseworker was unable to complete an updated assessment due to the respondent's lack of cooperation. As such, some of the information contained in the April 20, 2023, BCS report was gathered from an integrated assessment completed on March 29, 2022.

¶ 18     The BCS report set forth the case history as stated above, including the incidents of domestic violence. The report also noted a prior report of January 12, 2022. The January 12, 2022, report stated that the family had an open intact case with DCFS due to a history of domestic violence and stated that the father was on probation for domestic abuse charges against the respondent from 2018 and 2020. The report also stated that a caseworker had spoken with J.N., who verified that he was present and had witnessed the father hitting the respondent. The report went on to state that the respondent had informed the caseworker that she no longer wanted to participate in intact services and stated that she would ensure that she was not home if a caseworker came to the residence.

¶ 19     The BCS report went on to state that the respondent was married to the father and that the two continued to reside together with the minor children. The report indicated that the caseworker had not been able to contact the respondent for the previous three weeks, but that the respondent had contacted the agency that would be providing parenting services on April 17, 2023, and scheduled an intake to be conducted on April 21, 2023.

¶ 20     The BCS report stated that the respondent had previously reported working full-time at a factory, but that her employment could not be verified. The BCS report also stated that, despite the multiple reports, the respondent denied any history of abuse or neglect towards the minor children. The report stated that DCFS had opened cases in the past due to ongoing allegations of domestic violence. The report further stated that the respondent had a history of drug use, including the use of cocaine and marijuana, and that the respondent's first reported involvement with DCFS was due to J.N.'s umbilical cord testing positive for cocaine. The report stated that the current status of the respondent's drug use could not be determined due to a lack of cooperation by the respondent.

6

¶ 21 Concerning the respondent's recommended services, the BCS report stated that the respondent had been referred for parenting and domestic violence education but had declined both services. The report stated that the respondent had alleged that the father had committed acts of abuse towards the minor children by hitting them in the face, arms, and back, and that J.N. had confirmed the allegations to be accurate.

¶ 22 Concerning the minor children, the BCS report stated that J.N. was five years old and had been enrolled in three different schools that school year. The report stated that J.N. was frequently absent from school and had been recommended for tutoring, but the family had declined the service. The report stated that J.N.'s teacher had expressed major concerns stating that J.N. was significantly behind his peers in reading, phonics, writing, and math.

¶ 23 The BCS report stated that A.N. was four years old and was reported to have speech issues and language errors that made it difficult to understand her when she communicated. The report stated that A.N. had been enrolled in school, but was withdrawn on April 3, 2022, and was not currently attending. Finally, the report stated that X.N. was one year old and that there were no reported medical, developmental, or mental concerns. All of the minor children are alleged to reside in Arthur, Illinois; however, the caseworker was unable to confirm the location of the minor children due to the respondent being uncooperative.

¶ 24 The BCS report summary stated as follows:

"Overall, the family has shown defiance against any recommendations and has refused engagement on multiple occasions. [The respondent] is often hostile and is very inconsistent with engagement often declining engagement until law enforcement or court is involved. The family has not been cooperative despite the Court's admonishment and there have [*sic*] been no engagement in services since the opening of the case. Worker also notes that the family was previously involved with intact family services from August 26,

7

2021, until April 20, 2022, when [the respondent had] voluntarily withdrawn[.] During that intact case no services were completed."

As such, the BCS report recommended that the minor children be made wards of the court; that guardianship and custody of the minor children be placed with the guardian administrator of DCFS; that the respondent be ordered to cooperate with DCFS; and, that the respondent be directed to complete all recommended services.

¶ 25    On April 26, 2023, the circuit court conducted a dispositional hearing. At the beginning of the hearing, the circuit court stated as follows:

"Today was set for a dispositional hearing. Now I do have the dispositional report that was filed on April 20. I don't—I don't see how we go forward today because of the missing information in the report. The information in the report for the parents largely comes from an integrated assessment that was done March of last year."

¶ 26    The respondent was not present in the courtroom when the circuit court stated the above. The circuit court noted that the hearing was set at 10 a.m., that it was currently 10:15 a.m., and that the respondent was not present. The circuit court was then informed that the respondent had arrived, and the circuit court allowed the respondent an opportunity to speak with counsel before proceeding. After the break, the circuit court stated:

"Okay. Dispositional hearing is lacking an essential report—or report is lacking essential information. The report attributes that to a lack of contact from the parents. Most of the information about the parents in the home environment for the children in the report come from an integrated assessment that's more than a year old. It's not current. The report has some information about the children that the caseworker was able to get from third parties, school. And it's got some information about reports that have been made, but it

8

reflects a lack of communication with the parents and a lack of cooperation with the information gathering process that I ordered in the adjudicatory order that I entered earlier.

So it's hard for me to see how we go ahead with a dispositional hearing today. And it seems to me that probably the hearing ought to be continued. I would again reemphasize the order that the parents cooperate with DCFS and provide the information they need.

And the parents are here now, and that's good. They're more than 15 minutes late. Everything I just explained I had already said before you came into the courtroom. I had started to talk about something else when you arrived, and that something else was going to be why I shouldn't issue warrants of apprehension to have the police come out and get the children because of complete lack of cooperation and information from both of you about what the home is.

Now, I suggest continuing the dispositional hearing."

¶ 27 The circuit court then requested the parties' positions on a continuance. The State objected to a continuance, arguing that the family had been investigated by DCFS for over a year, that the parents had been admonished to cooperate with DCFS, and that they had failed to cooperate, which was why the dispositional report did not contain current information. The State also argued that there were indications of abuse towards the minor children and that it would be a disservice to the minor children if the hearing did not proceed. The State further argued that the circuit court had sufficient information to proceed, that in all likelihood, the parents would continue to be uncooperative with DCFS, and that currently, DCFS was not even aware of the location of the minor children. The guardian *ad litem* (GAL) for the minor children concurred with the State's argument and also argued in support of the hearing proceeding.

¶ 28 Counsel for the father stated that he agreed that the dispositional report was lacking information and that he had no objection to continuing the hearing. Counsel for the respondent

9

argued that the respondent had provided the caseworker with recent contact information and that it was the caseworker who failed to make contact and obtain current information. Counsel for the respondent further argued that additional time was needed for a current integrated assessment to be completed and, as such, the hearing should be continued.

¶ 29    After hearing arguments, the circuit court stated as follows:

"What we're gonna do is we're gonna proceed with the dispositional hearing. Once we get through it, I'm going take up—I don't know if it's the court's motion, but the idea of whether the hearing ought to be continued or not, I'm gonna reserve ruling on. But we're gonna start to proceed today."

¶ 30    The circuit court then asked the parties if they had an opportunity to review the April 20, 2023, dispositional report and whether they had any additions or corrections to the report. The respondent indicated that she had reviewed the report and that, on page 2, the report indicated that the respondent's apartment number was unknown. The respondent stated that it was apartment number 8. The respondent also noted that on page 8, the report stated that the intake for the respondent's parenting education was scheduled for April 21, 2023. The respondent stated that the intake had been rescheduled to May 5, 2023. No other additions or corrections to the dispositional report was noted by any party.

¶ 31    The State then called Rosa Rivera to testify. Rosa stated that she was a caseworker employed by BCS since September 2022, and that she had completed the dispositional report in this matter. Rosa stated that she had received an update on the respondent's parenting services intake on Monday, two days prior to the dispositional hearing, that the respondent was a "no call no show." Rosa stated that if the respondent had rescheduled, it would have been after Monday morning when Rosa received the update.

10

¶ 32    Rosa also testified that, since filing the dispositional report, she had attempted to go to the respondent's apartment, which was listed as apartment number 2 on the minor children's school records. Rosa testified that the individual at apartment number 2 stated that they did not know the family, nor did they have any contact with the family. Rosa further testified that she had attempted to contact the respondent multiple times through text messages and telephone calls with no response.

¶ 33    Rosa acknowledged that she was able to speak with the respondent earlier that week in an attempt to set up an appointment to meet with the family, but that the respondent had failed to provide a specific time to meet or an updated address. Rosa also stated that she had requested a current address from the respondent the day before the dispositional hearing and never received a response. Rosa testified that there had only been one time when the regional director, who was covering for Rosa, failed to appear at a scheduled meeting because they had gone to the incorrect address.

¶ 34    Rosa further testified that, since the information was just given in open court, she now knew where the family resided, but was still concerned that the minor children's school had an incorrect address. Rosa stated that she had attempted to contact the respondent one to three times a week since September 2022. Rosa testified that she spoke Spanish so there were no difficulties with language.

¶ 35    Rosa stated that the last time she was able to see the minor children was the week before the last court hearing.[3] Rosa testified that she was fearful for the minor children's safety since she did not have the ability to say whether the family had a safe home or whether the children were free of cuts, welts, and bruises. Rosa testified that she did not know if the children were in school

_____

[3]The last hearing prior to the dispositional hearing was conducted on March 31, 2023.

that day, or whether the children received appropriate medical care. Rosa also could not state whether the respondent was free from drugs and/or alcohol. Rosa testified that the respondent's potential drug use was a major concern since one of the minor children had been born cocaine positive. Rosa went on to testify that the respondent had not engaged in any services during the pendency of this matter.

¶ 36 On cross-examination, Rosa stated that she spoke both English and Spanish. Rosa stated that she had texted the respondent on Monday of that week asking if the respondent would be available at 6:30 p.m. that evening for a visit. Rosa stated that the respondent had responded "anytime after school [J.N.] should be there; correct?" Rosa also stated that she did not have the correct apartment number in order to meet with the respondent and had asked for an apartment number which the respondent did not provide. Rosa testified that during the time she had been working with the respondent, the respondent had never provided a current address and that Rosa had to locate the family's residences through other means.

¶ 37 The State then moved, without objection, to admit State's exhibits 1, 2, and 3. State's exhibit 1 was a copy of a Champaign County Sheriff's Office report of November 29, 2022, State's exhibit 2 was a copy of a Champaign County Sheriff's Office report of August 26, 2022, and State's exhibit 3 was a copy of an Arthur Police Department report of December 9, 2020. Each of the reports concerned an incident of domestic battery between the respondent and the father. The circuit court reviewed and admitted the State's exhibits.

¶ 38 Next, the father was called to testify on his own behalf.[4] The father stated that the family currently resided in Arthur, Illinois, and had done so for approximately two or three weeks. The father testified that J.N. was enrolled and currently attending school and that A.N would be

---

[4]Since the father's rights are not at issue in this appeal, we will only set forth that portion of his testimony as it relates to the respondent and/or the minor children.

enrolled the following year. According to the father's testimony, the minor children's "grandma" provided childcare for X.N.

¶ 39    The father further testified that he had made efforts to keep in touch with the caseworker, but stated, "I lost my number, I didn't have her phone number. But [the respondent] has been contacting her." The father stated, "We're working well. I take my kid to the school, and I cook for him. I take him to the doctor when he was sick. I've been doing everything correctly."

¶ 40    Next, the respondent was called to testify on her own behalf. The respondent stated that she was currently employed at a factory and had been employed there for approximately a month and a half. The respondent stated that she had been trying to text the caseworker to set up some new appointments but that the caseworker "never came through." The respondent testified that she had texted the caseworker multiple times and tried calling. The respondent acknowledged that the caseworker had called, but that the respondent had never answered any of the calls because she preferred things in writing.

¶ 41    The respondent also stated that she had missed her parenting services intake on April 21, 2023, because of her work schedule, but had rescheduled the appointment. The respondent testified that J.N. was attending school and that the last time he had seen a doctor was two days prior due to a sore throat. The respondent stated that the minor children were all current on their shots and that they saw a doctor when they were sick. The respondent stated that her grandmother, who lived with them, watched the minor children while she was at work. The respondent testified that they lived in a two-bedroom apartment and that the family shared one bedroom. The respondent stated that the apartment had heat, running water, electricity, and food.

¶ 42    No further evidence was presented, and the circuit court noted that it had reserved the issue of potentially continuing the dispositional hearing. The circuit court again sought the parties' positions concerning a continuance. The State argued against a continuance, as did the GAL.

13

Counsel for the father stated that he believed that "we have brought out enough information" and that he had no objection to finishing the dispositional hearing that day.

¶ 43 Counsel for the respondent was the only party to argue for a continuance. According to the respondent's argument, the respondent presented enough evidence to indicate that it was miscommunication, not active avoidance, which resulted in the lack of information in the dispositional report, and that the respondent should be allowed another opportunity to participate in an integrated assessment. The circuit court then held as follows:

> "Okay. Well, first, like I said before, I don't know that it's the court's motion. But I'm the one who suggested that possibility at the beginning of the hearing, and I reserved the issue of continuing the hearing. It's denied. We've got enough information. While there are gaps in it, there's also enough information that inferences can be made and arguments can be made and are meaningful to the decisions the court has to make about why there are those gaps in the information and how that pertains to the best interests of the children in the decisions the court has to make. So it's denied."

¶ 44 The parties then made closing arguments. Counsel for both the respondent and the father argued that the wardship would be appropriate but requested that the custody and guardianship of the minor children remain with the parents since there was testimony that the minor children were safe and cared for in the home. Counsel for the respondent further argued that the minor children had remained in the home during the pendency of this matter; that there was no evidence that the respondent was unfit; that there had been no change in the family's situation since the filing of the petition; and that removing the minor children from the home would be damaging.

¶ 45 The circuit court found that it was in the best interests of the minor children and the public that the minor children be made wards of the court. As such, the circuit court adjudicated the minor children neglected and made them wards of the court. The circuit court stated that it had considered

14

all of the statutory factors regarding the best interests of the children, regardless of whether the circuit court specifically mentioned a certain factor or not. The circuit court also noted that it considered the risks attendant to entering the minor children in substitute care. The circuit court then addressed the evidence and the reasonable inference that it drew from the evidence. Concerning the witnesses, the circuit court stated as follows:

> "The testimony of [Rosa] to the extent it conflicted with the testimony that was given by [the respondent], I had a chance to watch both of them testify and observe their demeanor while testifying. And I find [Rosa's] testimony to be credible. *** But none of what [the respondent] offered as an explanation for her caseworker's lack of information washed. None of it made any sense.

> \* \* \*

> This family was and is actively engaged in hiding as much as possible about their home environment from DCFS as they can. That's a problem because of the history of domestic violence in the home."

¶ 46　The circuit court went on to address the problems the children were experiencing in the school and the lack of engagement with even the most basic of the recommended services. Therefore, the circuit court found that the respondent was unfit or unable, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minor children and that the health, safety, and best interests of the minor children would be jeopardized if the minor children remained in the custody of the respondent. The circuit court then ordered custody and guardianship of the minor children removed from the respondent and placed with the guardianship administer of DCFS.

¶ 47　The circuit court issued a written dispositional order the same day, April 26, 2023. The dispositional order stated that the circuit court had considered the dispositional report as corrected

by the parties; all evidence and stipulations adduced at the dispositional and earlier hearings; the permanency goal set for the minor children by DCFS; the nature of the service plan for the minors; the services delivered and to be delivered under the plan; the recommendations and arguments of the parties; the factors specified in section 2-3 of the Act (*id*. § 2-3); and all relevant facts and circumstances. The dispositional order then stated that the circuit court had found it in the best interest of the minor children and the public that the minor children be made wards of the court and adjudged neglected. The order further stated that the circuit court found the respondent unfit or unable, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minor children and that the health, safety, and best interests of the minor children would be jeopardized if the minor children remained in the custody of the respondent. The dispositional order adopted and incorporated the circuit court's findings rendered orally and in writing at all prior hearings, including the adjudicatory hearing.

¶ 48     The dispositional order went on to state that the above findings were based on the parents' history of domestic violence that extended back to at least 2020, and that neither parent had developed an understanding of the risk and danger domestic violence presents for a child's home environment. The order also stated that the parents, even after being arrested for domestic violence, had refused to cooperate with authorities and had extended their non-cooperation strategy to the people actively trying to help the parents make their home environment safe for the minor children.

¶ 49     The dispositional order stated that the respondent failed to engage in any services or keep the caseworker informed concerning the minor children. Aside from the trauma that domestic violence inflicts on minors, the order stated that J.N. was significantly behind his peers in school and was frequently absent, and that A.N. was also frequently tardy when she was in preschool and was then disenrolled. Based on the circuit court's findings, the dispositional order stated that the minor children were adjudged neglected and made wards of the court, and that the custody and

16

guardianship of the minor children were removed from the parents and placed with the guardianship administer of DCFS. On May 4, 2023, the respondent filed a timely notice of appeal of the circuit court's April 26, 2023, judgment.

¶ 50                                    II. ANALYSIS

¶ 51    The Act (705 ILCS 405/1-1 *et seq.* (West 2022)) provides a two-step process for an adjudication of wardship. *In re A.P.*, 2012 IL 113875, ¶ 18. The first step is the adjudicatory hearing at which the circuit court considers only whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2022); *In re A.P.*, 2012 IL 113875, ¶ 19. If the circuit court determines that the minor is abused, neglected, or dependent, then the matter proceeds to a dispositional hearing at which the circuit court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor child be made a ward of the court. 705 ILCS 405/2-22(1) (West 2022); *In re A.P.*, 2012 IL 113875, ¶ 21.

¶ 52    The respondent does not challenge the circuit court's finding that the minor children were neglected. Instead, the respondent first argues that the circuit court abused its discretion in denying the motion to continue the dispositional hearing. The respondent argues that the circuit court recognized that the dispositional report lacked essential current information concerning the parents and the home environment of the minor children since the information in the dispositional report was recycled from an integrated assessment completed more than a year earlier. As such, the respondent argues that the dispositional report failed to reflect her current employment status, any current information about her substance abuse or lack thereof, or any information pertaining to her mental and emotional health.

¶ 53    The respondent also argues that the evidence at the dispositional hearing implicated the caseworker's "lackadaisical approach" and lack of communication as the cause of the incomplete information, and that the respondent had attempted to text the caseworker to schedule

17

appointments. Therefore, the respondent argues that it was an abuse of discretion for the circuit court to rely on "years-old" information and not grant the continuance.

¶ 54    Section 2-22(4) of the Act (705 ILCS 405/2-22(4) (West 2022)) provides that on its own motion, or on motion by one of the parties, the circuit court may adjourn a dispositional hearing for a reasonable period to receive reports or other evidence, if the adjournment is consistent with the health, safety, and best interest of the minor. A party does not, however, have an absolute right to a continuance, and the grant or denial of a motion for continuance lies in the sound discretion of the circuit court. *Somers v. Quinn*, 373 Ill. App. 3d 87, 96 (2007). Under an "abuse of discretion" standard of review, the circuit court's finding will not be disturbed on appeal unless the circuit court acted arbitrarily, without employing conscientious judgment, or, considering all the circumstances, the circuit court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice. *Petryshyn v. Slotky*, 387 Ill. App. 3d 1112, 1116 (2008).

¶ 55    Here, we find no indication within the common law record or the record of proceedings to suggest that the circuit court abused its discretion in denying a continuance. Although the dispositional report may have been based, in part, on a year-old integrated assessment, the circuit court provided the respondent with an opportunity to make any additions or corrections to the report prior to taking any evidence. The only additions or corrections made by the respondent were to provide a correct apartment number and to state that she had rescheduled her parenting education intake. We further note that the respondent had the opportunity to add or correct information within the report through her sworn testimony. Therefore, even if the lack of communication was caused in part by the caseworker as the respondent argues, the respondent had ample opportunity to add to or correct the dispositional report, and to present evidence regarding any current information for the circuit court's consideration.

18

¶ 56    We find that the circuit court exercised due diligence in raising the issue of a potential continuance of the hearing due to the dispositional report, and in reserving its ruling to ensure that it had sufficient information as it pertained to the best interests of the minor children. We do not find that the circuit court acted arbitrarily or without conscientious judgment. We further do not find, when considering all the circumstances, that the circuit court acted unreasonably or ignored recognized principles of law. Therefore, we find that the circuit court did not abuse its discretion in failing to continue the dispositional hearing.

¶ 57    The respondent next argues that the circuit court had insufficient evidence to support a finding that the respondent was unfit or unable, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minor children. The respondent argues that the State failed to introduce any current evidence, other than what was included in the dispositional report, and that the respondent was a "no call/no show" for her parenting service intake. The respondent further argues that her testimony indicated that the minor children were healthy, current on immunizations, had daycare or attended school, and were well fed.

¶ 58    The respondent goes on to argue that the State admitted three police reports, the most recent from November 2022, yet failed to introduce any evidence of the parties' marriage or relationship at the time the petition was filed. As such, the respondent argues that the circuit court had no current information about the relationships within the family or the condition of the residence and drew inferences on evidence that was thin to nonexistent. Therefore, the respondent argues that the circuit court's finding that the respondent was unfit or unable was against the manifest weight of the evidence.

¶ 59    At a dispositional hearing, the circuit court may commit the minor child to wardship if the circuit court determines (1) that the minor's parents are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are

19

unwilling to do so" and (2) "that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27(1) (West 2022). The paramount consideration in any proceeding initiated pursuant to the Act is the best interest of the minor. *In re A.P.*, 2012 IL 113875, ¶ 18. The States bears the burden of proving inability by a preponderance of the evidence at the dispositional phase. *In re Kelvion V.*, 2014 IL App (1st) 140965, ¶ 23.

¶ 60    This court will defer to the circuit court's findings of fact because it is in the best position to observe the testimony of the witnesses, assess their credibility, and weigh the relative evidence. *In re Sharena H.*, 366 Ill. App. 3d 405, 415 (2006). The circuit court's determination will only be reversed if its factual findings are against the manifest weight of the evidence or if the circuit court abused its discretion by selecting an inappropriate dispositional order. *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006). A factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where its finding is unreasonable, arbitrary, or not based on the evidence presented. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. As previously stated, an abuse of discretion will only be found if the circuit court acted arbitrarily, without employing conscientious judgment, or, considering all the circumstances, the circuit court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice. *Slotky*, 387 Ill. App. 3d at 1116.

¶ 61    The respondent argues that the circuit court had insufficient evidence to support a finding that the respondent was unfit or unable to care for or protect her children; however, as stated earlier, the respondent had ample opportunity at the hearing to provide the circuit court with evidence regarding the care of minor children and the home environment. As stated above, this court gives deference to the circuit court regarding the credibility of witnesses as it is in the best position to observe the conduct and demeanor of the witnesses. *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002).

The circuit court specifically stated that it had the opportunity to observe both the respondent and the caseworker, and where their testimony conflicted, the circuit court found the caseworker's testimony to be credible.

¶ 62 Further, although the State's evidence, in part, was based on incomplete information, the circuit court found that it was the respondent's lack of cooperation and failure to engage in any of the services that had caused the information to be incomplete. The circuit court stated that "[n]one of what [the respondent] offered as an explanation for her caseworker's lack of information washed." The circuit court considered the testimony of the caseworker, who testified to the problems the minor children had in school, the inability to see the minor children to check on their welfare, and the refusal of the respondent to cooperate or engage in services. As such, the circuit court found that the State had proven, by a preponderance of the evidence, that the respondent was unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor children. We do not find that the opposite conclusion is clearly evident or that the circuit court's finding was unreasonable, arbitrary, or not based on the evidence presented. Therefore, we find that the circuit court's finding that the respondent was unfit or unable was not contrary to the manifest weight of the evidence.

¶ 63 The respondent's final argument is that the circuit court abused its discretion in removing custody of the minor children from the respondent. Again, the respondent's argument is that the circuit court lacked sufficient information to determine that the minor children were in an unsafe environment since the circuit court had no current information about the relationships within the family or the condition of the residence.

¶ 64 Section 2-23(1) of the Act (705 ILCS 405/2-23(1) (West 2022)) provides that a minor adjudicated a ward of the court may be (1) continued in the custody of his or her parents, guardian, or legal custodian; (2) placed in accordance with section 2-27 of the Act; (3) restored to the custody

21

of the parent, guardian, or legal custodian, provided the court shall order the parent to cooperate with DCFS and comply with the terms of an after-care plan or risk the loss of custody of the child; or (4) ordered emancipated. *Id*. In this matter, the circuit court determined placement in accordance with section 2-27 of the Act. *Id*.

¶ 65    Section 2-27 of the Act allows custody and guardianship to be placed with the guardianship administrator of DCFS. *Id*. § 2-27(1)(d). The circuit court considered the testimony of the caseworker who stated that she was fearful for the minor children's safety since she could not verify to the circuit court whether the family had a safe home; whether the children were free of cuts, welts, and bruises; whether the children were in school that day; whether the minor children received appropriate medical care; or whether the respondent was free from drugs and alcohol. The caseworker further testified that she could not verify to the circuit court where the children were currently residing and that she had not been able to physically see the minor children since the week before the last court hearing. The evidence also demonstrated J.N.'s frequent absences from school, that A.N. had been completely withdrawn from school, and the respondent's lack of cooperation which resulted in the limited information the circuit court had pertaining to the home environment.

¶ 66    As previously stated, the best interest of the minor is the paramount consideration at a dispositional hearing. *In re A.P.*, 2012 IL 113875, ¶ 18. In this matter, the only evidence the circuit court had pertaining to the well-being of the minor children was the testimony of the respondent and the father. A trier of fact must determine the weight to be given to self-serving testimony where such testimony has no corroborating evidence. See generally *In re M.B.*, 2021 IL App (4th) 210182-U, ¶ 26; *In re L.T.*, 2020 IL App (3d) 190740-U, ¶ 28. The circuit court found that "[t]his family was and is actively engaged in hiding as much as possible about their home environment from DCFS as they can. That's a problem because of the history of domestic violence in the home."

22

As such, we do not find that the circuit court acted arbitrarily, without employing conscientious judgment, or that, considering all the circumstances, the circuit court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice. *Slotky*, 387 Ill. App. 3d at 1116. Therefore, we do not find that the circuit court abused its discretion in selecting a dispositional order that placed custody and guardianship of the minor children with DCFS.

¶ 67 Based on the above, we find that the circuit court's denial of a continuance of the dispositional hearing was not an abuse of discretion. We further find that the circuit court's finding that the respondent was unfit or unable was not contrary to the manifest weight of the evidence, and that the circuit court did not abuse its discretion in removing custody and guardianship of the minor children from the respondent.

¶ 68                                III. CONCLUSION

¶ 69 Based on the foregoing, we affirm the judgment of the circuit court of Champaign County.


¶ 70 Affirmed.